# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-DP-00566-SCT

*FRONTRAIL EDWARDS a/k/a FRONTRELL EDWARDS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/97 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID A. STEPHENSON |
| | JOHN HOLDRIDGE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LESLIE S. LEE |
| DISTRICT ATTORNEY: | ELLIS J. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | REVERSED AND REMANDED - 02/18/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/3/99 |

### EN BANC.

### ROBERTS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. The case sub judice is an appeal prosecuted from the Circuit Court of Lauderdale County, Mississippi, after a change of venue from Clarke County, Mississippi. Frontrail Edwards (hereinafter "Edwards") was indicted during the February 1996 term of the Circuit Court of Clarke County in a three count indictment: two counts for capital murder and one count for armed robbery. Count I of the indictment charged that on October 5, 1995, Edwards and Kelvin Jordan shot and killed Codera D. Bradley while engaged in the commission of an armed robbery, in violation of Miss. Code Ann. § 97-3-19(2)(e). Count II charged that on October 5, 1995, Edwards and Jordan shot and killed Tony Roberts while engaged in the commission of an armed robbery, in violation of Miss. Code Ann. § 97-3-19(2)(e). Count III of the indictment, the armed robbery count, charged that Edwards and Jordan took a 1992 Nissan belonging to Tony Roberts in violation of Miss. Code Ann. § 97-3-79. A jury was impaneled on February 24, 1997, and Edwards was put to trial on the indictment on February 25, 1997. Edwards was found guilty on all three counts on February 26, 1997.

¶2. Thereafter, the jury heard evidence and arguments in aggravation and mitigation of the sentence to be imposed. The jury returned a sentence of death for both capital murder counts on February 27, 1997. The jury's verdict reads as follows:

As to Count I

We, the Jury, unanimously find from the evidence, beyond a reasonable doubt, that the following facts existed at the time of the commission of the Capital Murder under Count I;

That the Defendant intended that the killing of Cordera Bradley take place or; That the Defendant contemplated that lethal force would be employed.

Next, we, the Jury, unanimously find that the aggravating circumstances of:

The capital offense was committed while the Defendant was engaged in the crime of Robbery or was an accomplice to Robbery;

The capital offense was committed for the purpose of avoiding arrest;

The capital offense was especially heinous, atrocious or cruel.

Are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find the defendant should suffer death under Count I.

/s/ Billy R. Goodman

Foreman of the Jury

As to Count II

We, the Jury, unanimously find from the evidence, beyond a reasonable doubt that the following facts existed at the time of the commission of the Capital Murder under Count II;

That the Defendant intended that the killing of Tony Roberts take place or;

That the Defendant contemplated that lethal force would be employed.

Next, we, the Jury, unanimously find that the aggravating circumstances of:

The capital offense was committed while the Defendant was engaged in the crime of Robbery or was an accomplice to Robbery;

The capital offense was committed for the purpose of avoiding arrest;

The capital offense was especially heinous, atrocious or cruel.

Are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find the Defendant should suffer death under Count II.

/s/ Billy R. Goodman

Foreman of the Jury

¶3. Edwards was sentenced to death by lethal injection and April 11, 1997, was set as the date for execution of the sentence. A Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial were both filed on March 7, 1997. Both motions were overruled on April 30, 1997. The execution of the death sentence has been stayed pending appeal. Edwards awaits the outcome of this appeal in the Maximum Security Unit of the State Penitentiary at Parchman, Mississippi. Edwards has raised twenty-one (21)assignments of error for review by this Court. Issues I, III-B, V-A, VI-C, and XXI require reversal as to both guilt and sentence. Unfortunately, these errors are egregious in that they specifically contravene either statutory or established case law. Even though the record reflects overwhelming evidence of the defendant's guilt, the errors are such that this Court has no choice in its decision. Accordingly, this case is reversed and remanded as to both guilt and sentence.

¶4. Edwards raised the following issues for review by this Court:

**I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING THE DEFENSE COUNSEL'S OBJECTIONS TO THE ADMISSION BY THE PROSECUTION AT THE CAPITAL SENTENCING PHASE OF EVIDENCE THAT EDWARDS PREVIOUSLY WAS ARRESTED AND INCARCERATED FOR, BUT NOT CONVICTED OF, RAPE?**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING DEFENSE COUNSEL'S OBJECTIONS TO THE PROSECUTION'S ARGUMENTS THAT A LIFE SENTENCE WOULD BE AN "INJUSTICE" TO THE VICTIMS AND THEIR FAMILIES AND FRIENDS; AND BY PERMITTING THE INTRODUCTION OF OTHER "VICTIM IMPACT" ARGUMENTS AND EVIDENCE?**

**III. WHETHER THE TRIAL COURT'S JURY INSTRUCTIONS AT BOTH PHASES OF THE TRIAL WERE ERRONEOUS BECAUSE THEY DID NOT CONFORM TO THE INDICTMENTS OR TO THE RELEVANT STATUTORY PROVISIONS ENACTED BY THE LEGISLATURE?**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING EDWARDS' MOTION TO SUPPRESS?**

**V. WHETHER THE TRIAL COURT COMMITTED NUMEROUS REVERSIBLE ERRORS IN ITS EVIDENTIARY RULINGS AT THE SENTENCING PHASE OF THE TRIAL?**

**A. THE TRIAL COURT ERRED IN EXCLUDING TESTIMONY CONCERNING EDWARDS' TWO BROTHERS AND THEIR LIVES.**

**B. THE TRIAL COURT ERRED IN ADMITTING JEANNEANE HARRISON'S TESTIMONY CONCERNING THE DEFINITION AND SYMPTOMS OF OPPOSITIONAL DEFIANT DISORDER.**

**VI. WHETHER THE PROSECUTOR IN THIS CASE ENGAGED IN MISCONDUCT THAT REQUIRES REVERSAL?**

**A. STATE'S DESCRIPTION OF EDWARDS AS "EVIL" DURING OPENING STATEMENT WAS ERROR.**

**B. THE STATE IMPROPERLY BOLSTERED ITS CASE BY INTRODUCING EVIDENCE OUTSIDE OF THE RECORD.**

**C. STATE'S VERBAL ATTACK ON DEFENSE COUNSEL DURING CLOSING ARGUMENTS WAS ERROR.**

**D. THE STATE MISSTATED THE LAW.**

**VII. WHETHER THE TRIAL COURT COMMITTED NUMEROUS REVERSIBLE ERRORS IN ITS EVIDENTIARY RULINGS AT THE GUILT-INNOCENCE PHASE OF THE TRIAL?**

**A. INVESTIGATOR KUFEL'S TESTIMONY CONCERNING WHETHER HE BELIEVED EDWARDS' CONFESSION WAS TRUTHFUL WAS ERROR.**

**B. TRIAL COURT ERRED IN ALLOWING CHARLIE McCREE TO TESTIFY THAT HIS TESTIMONY AT JORDAN'S TRIAL WAS CONSISTENT WITH HIS TESTIMONY AT EDWARDS' TRIAL.**

**C. THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF SHERIFF CROSS REGARDING WHETHER JORDAN WAS GOING TO PLEAD GUILTY TO ARSON AT ONE TIME.**

**D. THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF MARK HOLLOWAY AND DETECTIVE KUFEL.**

**E. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING DETECTIVE KUFEL TO TESTIFY THAT JORDAN TOLD THE POLICE THAT EDWARDS SHOT THE VICTIMS.**

**F. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO QUESTION SHERIFF CROSS IN REBUTTAL ABOUT HOLLOWAY'S STATEMENT TO THE POLICE.**

**G. THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE VICTIMS BEFORE THEIR DEATHS.**

**H. THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS INTO EVIDENCE WHICH SERVED ONLY TO PREJUDICE AND INFLAME THE JURY.**

**I. THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS INTO EVIDENCE WHICH SERVED ONLY TO PREJUDICE AND INFLAME THE JURY**.

**VIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ERRONEOUSLY INSTRUCTING THE JURY DURING THE PROCEEDINGS?**

**A. ARMED ROBBERY INSTRUCTION**

**B. CAPITAL MURDER INSTRUCTION**

**C. SENTENCING INSTRUCTIONS**

**IX. WHETHER THE TRIAL COURT ERRED IN PERMITTING DEFENSE COUNSEL TO WAIVE EDWARDS' RIGHT TO BE PRESENT AT THE SUPPRESSION HEARING?**

**X. WHETHER MISSISSIPPI'S CAPITAL PUNISHMENT SCHEME IS UNCONSTITUTIONAL AS APPLIED TO THIS CASE AND ON ITS FACE?**

**XI. WHETHER EDWARDS WAS DENIED A FAIR TRIAL BEFORE AN IMPARTIAL JURY; AND WHETHER THE TRIAL COURT ERRED IN DENYING EDWARDS' REQUEST FOR INDIVIDUAL, SEQUESTERED VOIR DIRE?**

**XII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE PROSECUTION TO OBTAIN PLEDGES FROM THE PROSPECTIVE JURORS TO CONVICT EDWARDS AND SENTENCE HIM TO DEATH AND BY PRECLUDING THE DEFENSE FROM ASKING PERMISSIBLE QUESTIONS DURING VOIR DIRE?**

**XIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT EDWARDS' CHALLENGES FOR CAUSE?**

**XIV. WHETHER THE TRIAL COURT ERRED IN REFUSING EDWARDS' PROPOSED LESSER-INCLUDED OFFENSE INSTRUCTION ON THE CODERA BRADLEY MURDER?**

**XV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO REFER TO, AND PRESENT EVIDENCE OF, ALLEGED ADMISSIONS BY EDWARDS PRIOR TO PROVING CORPUS DELICTI?**

**XVI. WHETHER THE TRIAL COURT ERRED IN GIVING PROSECUTION'S SENTENCING INSTRUCTIONS CS-1, CS-2, CS-3, AND CS-4?**

**A. SENTENCING INSTRUCTIONS CS-2 AND CS-3.**

**B. SENTENCING INSTRUCTION CS-1**

**C. SENTENCING INSTRUCTION CS-4**

**XVII. WHETHER THE TRIAL COURT ERRED IN REFUSING EDWARDS' PROPOSED SENTENCING INSTRUCTIONS?**

**A. INSTRUCTION D-S7**

**B. INSTRUCTION D-S1**

**C. INSTRUCTION D-S10**

**D. INSTRUCTION D-S3**

**E. INSTRUCTION D-S4**

**F. INSTRUCTION D-S2**

**XVIII. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE PROSECUTION STATED RACE-NEUTRAL REASONS FOR USING PEREMPTORY CHALLENGES ON HALF OF THE AFRICAN-AMERICANS IN THE JURY VENIRE?**

**XIX. WHETHER THE TRIAL COURT ERRED IN DISMISSING PROSPECTIVE JURORS ON THE GROUNDS THAT THEY WERE ILLITERATE?**

**XX. WHETHER THIS COURT MUST REMAND FOR A NEW CAPITAL SENTENCING PROCEEDING BECAUSE THERE IS AT LEAST ONE INVALID AGGRAVATING CIRCUMSTANCE IN THE CASE SUB JUDICE; MOREOVER, WHETHER CAPITAL PUNISHMENT IS A DISPROPORTIONATE PENALTY UNDER THE FACTS OF THIS CASE?**

**XXI. WHETHER THE ERRORS TAKEN TOGETHER ARE CAUSE FOR REVERSAL?**

## STATEMENT OF THE FACTS

¶5. On the evening of Thursday, October 5, 1993, Tony Roberts went to visit his two year old son, Codera Bradley, in Pachuta, Mississippi. Tony dropped by between 5:00 and 5:30 p.m. He stayed until around 8:30-8:45 p.m. Codera began crying to be with his father. Codera's mother called to the house and said that the baby could go with Tony. Her family paged Tony and he came back to pick up the baby. He left the house for the second time around 9:00 p.m. with Codera.

¶6. On the same evening, Edwards and his friend, Jordan, walked to a truck stop in Pachuta. According to Edwards, Jordan asked if he wanted to "jack" someone. Tony and his son, Codera, drove up in his green Nissan to get some gas. When Tony went to pay for the gas, Edwards asked him for a ride. Tony agreed to give the two men a ride and pulled his son into his lap. Jordan had an old .25 caliber pistol. Jordan gave Edwards the .22 pistol at the truck stop. Edwards got in the back of the car and Jordan got into the front passenger seat. They drove down Highway 11 to Barnett and asked Tony to pull over. When Jordan opened his door, Edwards shot Tony behind the right ear in the head. Tony asked what was happening and Jordan ordered him out of the car. Tony told Edwards and Jordan that they could have the car. (Edwards later told investigators Jordan shot at Tony on the highway, and that he also shot at Tony again). They saw a car coming and Jordan helped Edwards get Tony up and put him into the trunk of the car. Jordan then drove to a side road and removed Tony from the trunk of the vehicle. Jordan found a .380 handgun between the seats in the car which he used to shoot Tony again. They then drug Tony into some high weeds. Edwards then took the little boy to where they had taken Tony. According to Edwards, Codera got down over his father and Jordan shot him in the head.

¶7. Edwards and Jordan then returned to Edwards' trailer and got the radio, phone, amps and speakers out of the car, along with a plastic bucket of car care products. They retrieved some gas from the home of Edwards' mother and took the car to a sand pit and burned it. They returned home, looked over the stuff and went to sleep. They later sold the equipment to someone from Arkansas.

¶8. Mark Holloway testified that sometime on Saturday, he and Tracey Nicholson went to Edwards' trailer in search of Holloway's pager. In the far back bedroom of the trailer, they saw pieces of electronic equipment (a car stereo, speakers, etc.). In fact, Holloway stated that Edwards tried to sell him some of the sound equipment and told Holloway about the events that had occurred.

¶9. At Edwards' trial, Sheriff Cross of Jasper County testified that on Thursday, October 5, law enforcement officials in Jasper County, Mississippi, received missing persons reports on Tony and his infant son, Codera. On Sunday, October 8, the Jasper County Sheriff's Department received a call about a burned vehicle in a dirt pit located in the Rose Hill area. The tag from the car indicated it belonged to Tony. Upon inspection, Sheriff Cross noticed that the radio speakers had been removed from the car. A second phone call was made to Deputy Reynolds' wife with information that there were some items, such as a stereo, speakers, car phone and pagers, at Edwards' house. Based on this phone call a warrant was obtained to search Edwards' trailer. It was later discovered that this call came from Holloway.

¶10. Sheriff Cross further testified that on Monday, October 9, during the search of the area outside of the trailer, one of the officers found a tan pail containing car products, .380 cartridges, a .25 pistol and a shimmy cloth. The bucket and accompanying products were identified as products similar to those which Tony had kept in his vehicle. These items were seized and Edwards was arrested on October 10, 1995. Edwards subsequently confessed his involvement in the murders to Sheriff Cross.

¶11. After the statements had been obtained from Edwards and Jordan, Jordan took law enforcement officers to the site in Clarke County where the bodies of Tony and Codera were located. The bodies were found lying next to each other. The front pockets of Tony's pants were turned inside out. Dr. Hayne testified at Edwards' trial that Codera was shot once in the back of the head with the bullet exiting above the upper lip. Dr. Hayne further stated Tony suffered two gunshot wounds: one wound entered below the right eye and exited through the left eye; the other entered the left temple above the left ear and exited from the right ear. The latter wound was lethal.

¶12. Sheriff Cross testified that officers recovered a .38 pistol from the pond. This weapon was believed to be thrown into the pond by Jordan. In addition, they recovered the .22 pistol from Edwards' mother. Steve Boyd, a forensic scientist specializing in firearms evidence examination, and Melissa Schoene, a forensic scientist, both testified at Edwards' trial. They both stated that a projectile was found in the ground under a pool of blood where Edwards stated Tony was pulled from the trunk in the lumberyard where he was later found. This projectile was fired from the .380 pistol. Two cartridge casings which were also found at the scene bore class characteristics of the .380. Two fragments of a bullet were also found at the scene which were determined to be the most common ammunition for a .22 caliber pistol.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING THE DEFENSE COUNSEL'S OBJECTIONS TO THE ADMISSION BY

**THE PROSECUTION AT THE CAPITAL SENTENCING PHASE OF EVIDENCE THAT EDWARDS PREVIOUSLY WAS ARRESTED AND INCARCERATED FOR, BUT NOT CONVICTED OF, RAPE?**

¶13. Edwards' first assignment of error claims the trial judge erred in allowing the prosecution, on cross-examination in the sentencing phase, to refer to Edwards' previous arrest for rape, even though there was no conviction. He asserts that this violates Mississippi Rules of Evidence and Miss. Code Ann. § 99-19-101 (5), as evidence of bad acts is not one of the eight enumerated aggravating factors admissible in a capital sentencing trial.

¶14. During direct examination Edwards' mother testified she had a lot of problems with Edwards as he was growing up. She stated that to discipline Edwards she tied him up, whipped him with switches and extension cords. She also stated that Edwards was in jail in Bay Springs and then later transferred to East Mississippi. Edwards' mother testified that he was evaluated in East Mississippi State Hospital. Through this witness, defense counsel elicited testimony to infer that Edwards' upbringing was the reason he was sitting in front of the jury being tried for capital murder.

¶15. On cross-examination, the State sought to discredit this testimony. Edwards' mother was asked whether she was aware that her son had been arrested for rape and incarcerated for a short time as result of the arrest. The prosecutor did state that the charges were dropped and that Edwards was not convicted. Edwards' mother testified she did not know how much time he had spent in jail or other detention facility.

¶16. The prosecution has no right to introduce evidence of wrongs and bad acts to prove Edwards' character or to show he acted in conformity therewith, unless it is competent rebuttal evidence in the face of the showing of Edwards's good character made on direct examination of this witness. ***Hansen v. State***, 592 So. 2d 114,148 (Miss. 1991) (*citing **Simpson v. State***, 497 So. 2d 424, 428-29 (Miss. 1984); ***Winters v. State***, 449 So. 2d 766, 771 (Miss. 1986)). M.R.E. 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶17. The State questioned Edwards' mother about a prior bad act, an arrest for rape, for which Edwards was not convicted. On direct examination, Edwards' mother did not testify that Edwards' character was good, that he had never raped anyone, that he had never been incarcerated, or that the prospect of a prolonged period of incarceration would change him for the better. Consequently, her direct examination testimony in no way opened the door to the State to ask this improper and prejudicial question. ***Nicholson v. State***, 704 So. 2d 81, 87 (Miss. 1997). The State should not have questioned Edwards' mother on rebuttal as to specific acts, as there was no testimony of good character in direct.

¶18. The questioning about Edwards' arrest for rape clearly violated the rule that testimony in a criminal trial should be confined to the charge for which the accused is on trial. ***Tucker v. State***, 403 So.2d 1274, 1275 (Miss.1981). This evidence was incompetent and inflammatory in character and thus, carries with it a presumption of prejudice. Edwards was tried and sentenced by the jury under Miss. Code Ann. § 99-19-101 (Supp.1984). This statute is distinctive, for in a capital murder case the jury is not only the fact finder of guilt or innocence, but it also has the power to return a sentence of death upon a verdict of guilty. ***Parker v.***

*State*, 367 So.2d 456, 458 (Miss.1979). In light of the fact that the imposition of death for capital murder is within the sole province of the jury, it cannot be said that the introduction of this inflammatory testimony regarding a prior arrest for rape had no harmful effect. ***Irving v. State***, 618 So. 2d 58, 59 (Miss. 1992); ***Clemons v. State***, 593 So. 2d 1004, 1006 (Miss. 1992). As a result, Edwards was not afforded the fundamental right to a fair trial in this case. Therefore, the admission of evidence of an arrest for rape over the objection of Edwards constituted reversible error.

¶19. Edwards also argues that the admission of this prior arrest was prohibited, since it was not relevant to any of the statutory aggravating factors. Aggravating circumstances are to be limited to the eight factors enumerated in Miss.Code Ann. § 99-19-101(5) (Supp.1991). ***Lester v. State***, 692 So. 2d 755, 800 (Miss. 1997). "[T]he state is limited to offering evidence that is relevant to one of the aggravating circumstances included in § 99-19-101." ***Stringer v. State***, 500 So.2d 928, 941 (Miss.1986); See ***Coleman v. State***, 378 So. 2d 640, 648 (Miss.1979). The statutory mandate of § 99-19-101(5) can be no clearer. The eight statutory factors do not include arrests or incarcerations; instead only felony convictions involving the use or threat of violence are admissible. Miss. Code Ann. § 99-19-101(5)(b) (Supp. 1998). Therefore, as a matter of law, the trial court erred when it allowed the prosecutor to repeatedly explore the appellant's prior arrest for rape. Under current law, no other finding is possible, and this issue requires reversal and remand for a new trial on sentencing.

### II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING DEFENSE COUNSEL'S OBJECTIONS TO THE PROSECUTION'S ARGUMENTS THAT A LIFE SENTENCE WOULD BE AN "INJUSTICE" TO THE VICTIMS AND THEIR FAMILIES AND FRIENDS; AND BY PERMITTING THE INTRODUCTION OF OTHER "VICTIM IMPACT" ARGUMENTS AND EVIDENCE?

¶20. Edwards' second assignment of error alleges that the trial court improperly allowed victim impact testimony in violation of the Eighth and Fourteenth Amendments, the Mississippi Constitution and Miss. Code Ann. § 99-19-101. During the sentencing phase of the trial, the State noted in its closing that injustice would be hard to bear by the family and friends of the victim. The State also asked the rhetorical question of whether it was justice if Edwards was able to sit in jail reading, sleeping and watching television.

¶21. "Victim impact statements are those which describe the victim's personal characteristics, the emotional effect of the crimes on the victim's family, and the family's opinions of the crimes and the defendant." ***Wells v. State***, 698 So. 2d 497, 512 (Miss.1997). In ***Payne v. Tennessee***, 501 U.S. 808 (1991), the United States Supreme Court held that the Eighth Amendment does not bar victim impact evidence and prosecutorial argument during the penalty phase of a capital trial. ***Conner v. State***, 632 So. 2d 1239, 1276-77 (Miss.1993); ***Jenkins v. State***, 607 So. 2d 1171, 1183 (Miss.1992); ***Hansen***, 592 So. 2d at 146-47. This Court, however, has been hesitant to embrace the full constitutional holding afforded by ***Payne***. In ***Hansen***, which was decided shortly after ***Payne***, we stated that "***Payne***, of course, is properly phrased in terms of the constitutionally permissible, not the mandatory, and in prudence, we should await another day to explore the full reach of our rediscovered freedom." ***Hansen***, 592 So. 2d at 146-47. In light of ***Hansen*** and ***Payne***, this Court later noted that victim character and impact evidence are proper when it is "necessary to a development of the case and [the] true characteristics of the victim and could not serve in any way to incite the jury." ***Jenkins v. State***, 607 So. 2d at 1183 (finding that evidence that victim was a mother, that she was a wife of four years, and that she was shy and did not like to wear dresses because they exposed her legs was relevant). See also ***Mack v. State***, 650 So. 2d 1289, 1324-25 (Miss. 1994).

¶22. In the case sub judice, the statements made by the State in closing do not appear to go beyond the guidelines concerning the admission of victim impact statements set out under our recent case law. *Mack*, 650 So. 2d at 1325; *Wells*, 698 So. 2d at 512-13. These statements appear to have some probative value and, when measured against the evidence as a whole, it is fair to say that this evidence was not so inflammatory that it prejudiced Edwards. However, this Court emphasizes that on retrial all are instructed to abide by the holdings of *Payne* and recent Mississippi case law.

### III. WHETHER THE TRIAL COURT'S JURY INSTRUCTIONS AT BOTH PHASES OF THE TRIAL WERE ERRONEOUS BECAUSE THEY DID NOT CONFORM TO THE INDICTMENTS OR TO THE RELEVANT STATUTORY PROVISIONS ENACTED BY THE LEGISLATURE?

### A.

¶23. Edwards contends his conviction and sentence must be reversed because the instructions given, C-7, C-8 and C-11, did not comport with the indictments against him. These three instructions read as follows:

Jury Instruction C-7

The Court instructs the Jury that should you find from the evidence in this case, beyond a reasonable doubt:

1. On or about the 5th day of October, 1995, in Clarke County, Mississippi;

2. The Defendant, Fontrell Edwards, along or with Kelvin Jordan, did, with or without a design to effect death, kill Codera Bradley, a human being,

3. While engaged in the crime of robbery;

then it is your sworn duty to find the Defendant guilty of Capital Murder under Count I.

Should the State fail to prove any one or more of these essential elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Capital Murder under Count I.

Jury Instruction C-8

The Court instructs the Jury that should you find from the evidence in this case, beyond a reasonable doubt:

1. On or about the 5th day of October, 1995, in Clarke County, Mississippi;

2. The Defendant, Fontrell Edwards, along or with Kelvin Jordan, did, with or without a design to effect death, kill Tony Roberts, a human being,

3. While engaged in the crime of robbery;

then it is your sworn duty to find the Defendant guilty of Capital Murder under Count II.

Should the State fail to prove any one or more of these essential elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Capital Murder under Count II.

Instruction C-11

The Court instructs the Jury that in order for the Defendant to be convicted of Capital Murder, you must find beyond a reasonable doubt that the killing was done during the commission of a robbery. Robbery is the taking of the personal property of another by force or threat of force from the person or presence of the victim(s).

¶24. Edwards argues instructions C-7, C-8 and C-11 were at substantive variance with the indictments charging him with capital murder while engaged in armed robbery. He further asserts instructions C-7, C-8 and C-11 did not contain the elements set forth in Miss. Code Ann. §§ 97-3-19(2)(e), 97-3-73 and 97-3-79.

¶25. Edwards' indictment read that:

Frontrell Edwards . . . did . . . on or about the 5th of October, A.D., 1995, did wilfully, unlawfully and feloniously take or attempt to one (1) 1992 Nissan, take the personal property of tony Roberts, from the person or presence of Tony Roberts, against his will by violence to his person by the use of a deadly weapon, a pistol, by putting the said Tony Roberts in fear of immediate injury to his person in violation of Mississippi Code Annotated Section 97-3-79 (1972) . . . .

Although jury instructions C-7, C-8 and C-11 term the underlying felony as "robbery," the elements contained in instruction C-9 were clearly those comprising the crime of armed robbery. Instruction C-9 read:

The Court instructs the Jury that should you find from the evidence in this case, beyond a reasonable doubt that:

1. On or about the 5th day of October, 1995, in Clarke County, Mississippi;

2. The Defendant, Fontrell Edwards, did, along with Kelvin Jordan, take or attempt to take the property of Tony Roberts from Tony Roberts' person or presence, against his will;

3. By violence or the threat of violence through the exhibition of a firearm;

then it is your sworn duty to find the Defendant guilty of Robbery by Use of a Firearm under Count III.

Despite the omission of the word 'armed' from this instruction, and instructions C-7, C-8 and C-11, there is no doubt that the jury was adequately instructed on the elements of that offense. *Foster v. State*, 639 So. 2d 1263, 1291-92 (Miss. 1994). Further, the jury was required to and did find Edwards guilty beyond a reasonable doubt of all the elements contained in the indictment. Edwards cites no authority for his proposition that reversible error exists where the proper elements of the crime charged are presented to the jury, although the labeling of the crime as it appears in the indictment and the instructions is not identical in all respects. *Foster*, 639 So. 2d at 1292. We find no such authority and thus find this point to be lacking in merit.

**B.**

¶26. The indictment for murder brought against Edwards stated that:

Frontrell Edwards and Kevin Jordan in said County and State on or about the 5th day of October, A.D., 1995, did wilfully, unlawfully, feloniously and knowingly kill Codera D. Bradley [and Tony Roberts], a human being, by shooting him to death with a pistol, without authority of law, while engaged in the crime of armed robbery under MCA § 97-3-79 in violation of Section 97-3-19(2)(e) Mississippi Code Annotated as amended (1972) . . . .

¶27. The indictment clearly stated that Edwards was indicted for the offense contained within Miss. Code Ann. § 97-3-19(2)(e) (1994) which provides:

(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnaping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies;

¶28. "This Court has often held that trial courts have no authority to grant substantive amendments to indictments."*Davis v. State*, 684 So. 2d 643, 660 (Miss. 1996). "It is hornbook law that a prosecutor has no power to alter the substance of an indictment, either through amendment or variance of the proof at trial without the concurrence of the grand jury." *State v. Berryhill*, 703 So.2d 250, 258 (Miss. 1997). The test of whether a change to the indictment is one of substance is "whether or not a defense under the indictment of information as it originally stood would be equally available after the amendment is made." *Griffin v. State*, 540 So. 2d 17, 21 (Miss. 1989) (*quoting Reed v. State*, 506 So. 2d 277, 279 (1987)). Therefore, an indictment may only be amended at trial if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. *Lester v. State*, 692 So.2d 755, 774-75 (Miss. 1997).

¶29. In this case, the indictments alleged that the killings were without authority of law, but the instruction failed to require the jury to find beyond a reasonable doubt that the killings were without authority of law. We are of the opinion that the amendment amounted to a substantive change in the indictment and that the appellant was prejudiced by the amendment at that late date. This Court is also of the opinion that the lower court committed reversible error which requires remand for a new trial.

¶30. Furthermore, the phrase "without authority of law" is an element of capital murder as defined by Miss. Code Ann. § 97-3-19(2)(e). In *Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995), this Court reversed a conviction for attempted capital rape because the trial court's instruction failed to set forth all of the necessary elements of that offense. In so ruling, this Court stated:

"It is axiomatic that a jury's verdict may not stand upon uncontradicted fact alone. The fact must be found via jury instructions correctly identifying the elements of the offense under the proper standards."*Turner v. State*, 573 So. 2d 1340, 1343 (Miss. 1990). "Where the jury had incorrect or incomplete instructions regarding the law, our review task is high unto impossible and reversal is

generally required." ***Neal v. State***, 451 So. 2d 743, 757 n. 9 (Miss. 1984).

See also ***Hunter v. State***, 684 So. 2d 625, 635-36 (Miss. 1996) (trial court and prosecution have obligation "to ensure that the jury is properly instructed with regard to the elements of the crime"; "[f]ailure to submit to the jury the essential elements of the crime is 'fundamental' error" (*citing **Screws v. United States**, 325 U.S. 91 (1945)*)).

¶31. In the present case, under the instruction given by the trial court, the jury did not have to find beyond a reasonable doubt that the killings occurred without authority of law. "Without authority of law" is a statutory element of capital murder and accordingly, it should have been contained within the instructions. Consequently, the trial court committed reversible error for which a new trial must be had.

## C.

¶32. Edwards also argues in this assignment of error that sentencing instructions CS-2 and CS-3 were fatally flawed.

### JURY INSTRUCTION CS-2

You have found the Defendant guilty of the crime of Capital Murder on Count I. You must now decide whether the Defendant will be sentenced to death or life imprisonment without parole or early release. Your first task shall be to choose a foreperson for the Jury. You shall select from the Jury one among you to be the Foreperson. The Foreperson shall be your spokesman before the Court and shall sign the verdict of the Jury. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the Defendant was convicted, and the character and record of the Defendant himself. You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

A. To return the death penalty in Count I you must first unanimously find from the evidence, beyond a reasonable doubt, that one or more of the following facts existed:

(1) That the Defendant actually killed Cordera Bradley or;

(2) That the Defendant attempted to kill Cordera Bradley or;

(3) That the Defendant intended that the killing of Cordera Bradley, take place or;

(4) That the Defendant contemplated that lethal force would be employed.

C. Next, to return the death penalty under Count I, you must find that the mitigating circumstances - those which tend to warrant the less severe penalty of life imprisonment - do not outweigh the aggravating circumstances - those which tend to warrant the death penalty.

Consider only the following element(s) in aggravation in determining whether the death penalty should be imposed in Count I:

(1) Whether the capital offense was committed while the Defendant was engaged in the crime of

Robbery or was an accomplice to Robbery.

(2) Whether the capital offense was committed for the purpose of avoiding arrest.

(3) Whether the capital offense was especially heinous atrocious or cruel.

You must unanimously find, beyond a reasonable doubt, that one or more of the preceding aggravating circumstances exist in this case to return the death penalty. If none of these aggravating circumstances are found to exist, the death penalty may not be imposed, and you shall write the following verdict on a separate clean sheet of paper:

## AS TO COUNT I

"We, the Jury, find the Defendant should be sentenced to life imprisonment without the possibility of parole or early release under Count I."

If one or more of the above aggravating circumstances is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstances. Consider the following elements of mitigation in determining whether the death penalty should not be imposed in Count I:

(1) If the offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance.

(2) If the Defendant had no significant history of prior criminal activity.

(3) If the Defendant was an accomplice in the capital offense and his participation was relatively minor.

(4) If the Defendant acted under extreme duress or under the substantial domination of another.

(5) If the Defendant's ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

(6) The Defendant's age at the time of the crime.

(7) any other matter, any other aspect of the Defendant's character or record, any other circumstance of the offense brought to you during the trial of this cause which you, the Jury, deem to mitigate on behalf of the Defendant.

If you find from the evidence that one or more of the preceding elements of mitigation exist, then you must consider whether it (or they) outweigh or overcome the aggravating circumstances you previously found. In the event that you find that mitigating circumstances do not outweigh or overcome the aggravating circumstances, you may impose the death sentence in Count I.

The verdict you return must be written on a separate sheet of paper signed by the foreman. All aggravating circumstances that you have unanimously found beyond a reasonable doubt must be listed in order to return a death sentence in this Count. However, you may choose to return the death penalty in one (1) Count and not the other. Your verdict should be written in one of the following

forms:

AS TO COUNT I

1. "We, the Jury, unanimously find from the evidence, beyond a reasonable doubt, that the following facts existed at the time of the commission of the Capital Murder under Count I . . .

Next, we, the Jury, unanimously find that the aggravating circumstances of . . . is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find the Defendant should suffer death under Count I.". . .

2. "We, the Jury, find the Defendant should be sentenced to life imprisonment without the possibility of parole or early release under Count I." . . .

3. "We, the Jury, are unable to unanimously agree on punishment under Count I."

CS-3 contains the exact language except it refers to Count II and Tony Roberts. These two instructions set forth as an aggravating circumstance "whether the capital offense was committed for the purpose of avoiding arrest." Edwards asserts that Miss. Code Ann. § 99-19-101 requires that the jury find beyond a reasonable doubt that the offense was committed to avoid a "**lawful**" arrest. Edwards contends that the trial court's failure to include the word "**lawful**" in the instruction relieved the State of its obligation of proving that the offense was committed to avoid a "lawful" arrest. Edwards' failure to cite authority clearly invokes the procedural bar; thus, this issue is barred.

## IV. WHETHER THE TRIAL COURT ERRED IN DENYING EDWARDS' MOTION TO SUPPRESS?

¶33. Edwards contends the evidence found in the bucket found outside his trailer and the questioning of Edwards by the sheriff which led to the discovery of the bodies and other evidence in the case was inadmissible because it was seized pursuant to a search warrant issued without probable cause. Edwards contends that the factual basis for the affidavit contained several false and misleading statements. Furthermore, he asserts that even with the false material set aside, the remaining content, together with the sworn oral testimony presented to the issuing magistrate, was insufficient to establish probable cause.

¶34. In *Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court established a "totality of the circumstances" standard for determining the existence of probable cause: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238. We adopted the *Gates* "totality of the circumstances" test in *Lee v. State*, 435 So. 2d 674, 676 (Miss.1983) and have applied it in numerous subsequent cases. *Petti v. State*, 666 So. 2d 754, 757 (Miss. 1995); *Roberson v. State*, 595 So. 2d 1310, 1317 (Miss. 1992); *Seales v. State*, 495 So. 2d 475, 478 (Miss.1986); *Harper v. State*, 485 So. 2d 1064, 1065 (Miss.1986); *Drane v. State*, 493 So. 2d 294, 298-99 (Miss.1986); *Garvis v. State*, 483 So. 2d 312, 314 (Miss.1986); *Walker v. State*, 473 So. 2d 435, 438 (Miss.1985); *Breckenridge v. State*, 472 So. 2d 373, 376 (Miss.1985); *McCommon v. State*, 467 So. 2d 940, 941 (Miss.1985);

*Hester v. State*, 463 So. 2d 1087, 1090 (Miss.1985).

¶35. In reviewing the magistrate's finding, the Court does not determine de novo whether probable cause existed. *Massachusetts v. Upton*, 466 U.S. 727, 732-33(1984); *Harper v. State*, 485 So. 2d 1064, 1065-66 (Miss.1986). Rather, its task as a reviewing court is to insure that there was a substantial basis for the magistrate's determination of probable cause. *Id.*

¶36. Viewing the facts in the record in light of this standard, we find in the affidavit a substantial basis for the magistrate's determination that probable cause existed. Specifically, the affidavit revealed that Detective Burnham had received information from a source who gave Edwards' name and the location of his trailer. The caller stated that Edwards was bragging about killing the man from whom he stole stereo equipment. This would be similar stereo equipment that was determined to be missing from Tony Roberts' burned car. The affidavit also disclosed that the informant had seen certain items at the trailer that were similar to items missing from the burned car owned by Tony Roberts. Setting the false material aside-sheriff stating that the caller did not leave a name when in fact the caller stated that his name was Kevin Costner-the affidavit's remaining content, together with the sworn oral testimony presented to the issuing magistrate, is sufficient to establish probable cause. *Petti v. State*, 666 So. 2d at 758. These facts provided a substantial basis for the magistrate's determination that probable cause existed.

¶37. The trial court did not err in denying the motion to suppress, and there is no reversible error.

### V. WHETHER THE TRIAL COURT COMMITTED NUMEROUS REVERSIBLE ERRORS IN ITS EVIDENTIARY RULINGS AT THE SENTENCING PHASE OF THE TRIAL?

¶38. Edwards contends that the trial judge made a series of erroneous evidentiary rulings during the capital sentencing phase that effectively thwarted the defense's mitigation presentation and permitted the prosecution to present evidence inadmissible under the Rules of Evidence, and in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Mississippi Constitution.

### A.

¶39. Edwards first argues that the trial court erred by excluding testimony concerning his two brothers and their lives. He asserts that where the sentencer is not permitted to consider all mitigating evidence, there is a risk of "erroneous imposition of the death sentence" and the case should be remanded for re-sentencing. *Mills v. Maryland*, 486 U.S. 367, 375 (1988) (*quoting Eddings v. Oklahoma*, 455 U.S. 104, 117n. (1982)).

¶40. The Eighth and Fourteenth Amendments provide that a sentencer may not be ""precluded from considering, as a mitigating factor, any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."" *Wilcher v. State*, 697 So. 2d 1087, 1103 (Miss. 1997) (*quoting Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (*citing Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality))). Consequently, the Constitution demands individualized sentencing and prohibits a court from excluding any relevant mitigating evidence as a matter of law. *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982).

¶41. The State argues that the evidence excluded by the trial court was not relevant to mitigation, because

the evidence did not pertain to Edwards' character or record or the circumstances of the offense. The State contends that the evidence was properly excluded because it discussed the lives of Edwards' brothers rather than his own life. However, Edwards was simply trying to present as mitigation evidence the contention that the Weems Mental Health Center had failed Edwards. The defense produced testimony that Edwards became a client of Weems during the institution's infancy. It was Edwards' contention that Weems was unable to address the problems he suffered as a result of abuse and neglect he experienced in his mother's household. An important component of this showing was to establish that Edwards' problems were not the result of an inherent character flaw, but of his abusive upbringing. Accordingly, Edwards sought to present evidence concerning his brothers. The defense intended to show that Edwards' older brother Sammie, like Edwards, has fared badly in life, but that Carlton, six years Edwards junior, had done much better because Weems was more competent by the time Carlton arrived there.

¶42. This Court has held that the use of mitigating evidence is virtually unlimited with the only restriction being that it must be relevant. ***Davis v. State***, 512 So.2d 1291, 1293(Miss. 1987); ***Leatherwood v. State***, 435 So.2d 645, 650 (Miss.1983). See also ***Eddings***, 455 U.S. at 112 (1982); ***Washington v. State***, 361 So.2d 61, 68 (Miss.1978). This was relevant mitigation evidence of Edwards' character and should have been admitted by the trial court. The statute, Miss. Code Ann. § 99-19-101(1994), is clear that any mitigation evidence must be admitted. We find the trial court's ruling that this mitigation evidence was inadmissible erroneous and, thus requires reversal.

### B.

¶43. Edwards also claims that the trial court erroneously overruled defense counsel's proper objections to the State's questions during the capital sentencing phase. Specifically, Edwards objected to questions to his mother about his arrest and incarceration for rape. However, this objection was addressed in issue 1 and need not be addressed any further. Edwards also objected to testimony by Ms. Jeanneanne Harrison about the definition and symptoms of oppositional defiant disorder. It is Edwards' contention that Ms. Harrison's testimony, as Rule 702 expert opinion testimony, should not have been admitted because Ms. Harrison had not been offered, qualified, and tendered as an expert witness. He asserts that Harrison's testimony was in violation of Miss. R. Evid. 702.

¶44. The use of testimony by experts is governed by M.R.E. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

¶45. "The question of whether an individual is qualified to testify as an expert is committed to the sound decision of the trial court. This Court does not reverse such decisions absent a showing that this discretion has been abused, that is, that the witness was clearly not qualified." ***Cooper v. State***, 639 So. 2d 1320, 1325 (Miss.1994). Thus, unless this Court concludes that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand. ***Seal v. Miller***, 605 So. 2d 240, 243 (Miss.1992) (*citing* ***Hooten v. State***, 492 So. 2d 948, 950-51 (Miss.1986)).

¶46. Harrison's education and experience reveal that she was qualified and familiar with medical terminology. The trial judge made a specific finding that she was answering based upon her experience and her education. Furthermore, her testimony was limited in scope and she did not attempt to stray beyond the

limits of her knowledge (as evidenced by her response, "I don't know that."). This particular testimony comports with Miss. R. Evid. 702 that she could answer questions based on her experience, training and education. Further, this testimony was helpful to the jury as it looked at the reports that were admitted into evidence during her direct testimony. Even if Ms. Harrison's expertise in particular areas were questionable, it remained within the discretion of the trial court whether to allow testimony at the time of proffer. *Couch v. City of D'Iberville*, 656 So. 2d 146, 152 (Miss. 1995). There is no merit to this allegation of error.

## VI. WHETHER THE PROSECUTOR IN THIS CASE ENGAGED IN MISCONDUCT THAT REQUIRES REVERSAL?

¶47. Edwards complains about four instances of prosecutorial misconduct which should require reversal of this case.

### A.

¶48. Edwards first contends that the trial court committed reversible error in overruling defense counsel's objection to the prosecution description of Edwards as "evil" during opening statement at the guilt phase. However, when this comment is taken within the context of the opening argument of the State, there was nothing improper about the use of the word "evil". This opening argument certainly did not compare to the examples in *Ballenger v. State*, 667 So. 2d 1242, 1271 (Miss. 1995) and *Davis v. State*, 660 So. 2d 1228, 1251(Miss. 1995), where the defendant was referred to as Adolf Hitler or Charles Manson. Furthermore, the use of the word evil in the case sub judice did not cause irreparable damage to Edwards' defense and thus, this comment does not warrant reversal. *Davis*, 660 So. 2d at 1251.

### B.

¶49. Next, Edwards claims the State improperly bolstered its case by introducing evidence outside the record. Specifically, Edwards argues (1) the State testified that there was professional help at the training school Edwards attended, and (2) the State testified that Edwards' diagnosis of anti-social is "the same diagnosis that they would give to the other people up in the jail." The first statement concerning professional help at the training school was made during rebuttal argument of the sentencing phase by the State and was in response to defense contentions that Edwards was given inadequate help. "'Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety.'" *Wilcher v. State*, 697 So. 2d 1087, 1110 (Miss. 1997) (*quoting* *Ballenger*, 667 So. 2d at 1270 (*quoting* *Ahmad v. State*, 603 So. 2d 843, 846 (Miss. 1992))); *Davis*, 660 So. 2d at 1248. Additionally, in both of the circumstances presented in the case at hand, although the court overruled the objection, it did admonish the jury that t he comments were only argument and not evidence. The jury was instructed in part:

> Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark.

Given the comments made by the prosecutor, the comments of the judge, and the jury instruction, this issue does not require reversal. The jury was admonished, and this Court presumes the jury did disregard the remarks. *Ormond v. State*, 599 So. 2d 951, 961 (Miss. 1992).

¶50. Edwards also asserts the references to the IQ testing, the defense counsel's attitude towards the death

penalty and the State's claim that "we all know that criminal don't always get caught" were improper. However, Edwards did not object to these comments at trial. Therefore, Edwards is procedurally barred from raising these arguments on appeal. *Davis v. State*, 660 So. 2d 1228, 1251(Miss. 1995) (*citing Foster v. State*, 639 So. 2d 1263, 1289 (Miss. 1993); *Watts v. State*, 492 So. 2d 1281, 1291 (Miss.1986)).

¶51. Edwards further argues that the State went outside the record when it launched a long tirade about the manifold pleasures of serving a sentence of life imprisonment without parole or early release, over defense counsel's unsuccessful objection.

¶52. This Court has cautioned prosecutors to refrain from using this type of argument. *Hunter v. State*, 684 So. 2d 625, 637 (Miss.1996); *Williams v. State*, 522 So. 2d 201, 209 (Miss.1988). In *Williams*, we explained as follows:

> The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.

*Williams*, 522 So. 2d at 209. Although this Court declined in *Williams* to reverse on this assignment due to insufficient preservation of the record, it quoted a similar case in stating, "'We do not think that this assignment of error standing alone would require reversal.'" *Id.* (*quoting Fulgham v. State*, 386 So. 2d 1099, 1101 (Miss.1980)). In any event, an analysis of this assignment of error requires an examination of the context in which it arose. *Williams*, 522 So. 2d at 209. "In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remark, but must also take into account defense counsel's opening salvo." *Williams*, 522 So. 2d at 209 (*quoting Booker v. State*, 511 So. 2d 1329, 1331 (Miss.1987)).

¶53. In his sentencing phase closing argument, defense counsel asked the jury to consider that, "You can impose 2 life sentences without parole eligibility, and those sentences will ensure that Frontrell dies in prison, that he will be separated from society. If you impose those sentences, then you will be in conformance with the law. There is no requirement that you kill Frontrell." This is precisely the type of argument of which Edwards now complains. Furthermore, as this Court explained in *Williams*, supra, the danger inherent in the "send a message" argument is that jurors will neglect their duty to determine whether "the evidence showed the defendant to be guilty of the crime charged." *Williams*, 522 So. 2d at 209. This danger does not exist at the sentencing phase, where Edwards has already been found guilty of capital murder. The sole determination to be made at this point is whether the death penalty should be imposed. This Court does not fault the prosecution for arguing that the "message" conveyed by a death penalty verdict would be different than that urged by the defense. To do so would be disingenuous given the inescapable reality that deterrence is, in fact, an established goal of imposing the death penalty, which goal necessarily entails, to some extent, sending a message. The trial court did not err in permitting this argument by the prosecution.

**C.**

¶54. Edwards also contends that the State engaged in misconduct by verbally attacking defense counsel during its closing argument of the guilt phase. Edwards argues that the highly derogatory comments about defense counsel improperly deflected the jury's attention from the issue at hand. The comments complained of were made during the State's closing argument:

> But, instead, ladies and gentlemen, he made an argument that, quite honestly, I don't have sympathy as I thought I would for him, because I can't believe that anybody could get up here with a straight face and argue to you the things that he has just argued . . . .

> Quite honestly, ladies and gentlemen, it boggles my mind as to how anybody could argue such a ridiculous proposition, other than the fact I realize they have a job to do and they have to come up with something. But it is still mind boggling how anybody can stand here with a straight face in front of you and say we haven't proven that . . . .

> Now, that does tee me off, ladies and gentlemen, for the defense lawyer, the man who is representing the man who made those maggots infest that man's head, that man over there is defending the dignity of Tony Roberts by telling you that the photographs that show the bullet holes in his head don't show something important in this case? . . .

¶55. Such comments were improper, and were a personal attack on the demeanor, as well as the status, of the defense counsel; they were clearly irrelevant to the guilt or innocence of the criminal defendant and apparently intended solely to prompt the jury to question the believability of defense counsel's arguments.

¶56. The prosecutor's attack of defense counsel strayed from professionalism and was inappropriate. Inappropriate or improper prosecutorial remarks are not necessarily reversible error. In *Dunaway v. State*, 551 So. 2d 162 (Miss. 1989), this Court noted:

> As set forth in *Craft v. State*, 226 Miss. 426, 84 So. 2d 531 (1956), the test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice.

*Dunaway*, 551 So. 2d at 163. Under this test, however, it appears that there was reversible error as this was an unwarranted personal attack upon the defense counsel. The language used by the State was egregious. While this error alone may or may not have resulted in reversibility, it is to be remembered that the defendant's right to a fair trial is paramount. This type of misconduct is condemned by this Court and is not to occur on remand.

## D.

¶57. Lastly, Edwards argues that the State misstated the law when it stated, "the fact that he is 18 years of age is not a mitigating factor at all." However, this issue is barred from review for lack of any objection. See *Jackson; Chase, supra*. Thus, there is no merit to this argument.

### VII. WHETHER THE TRIAL COURT COMMITTED NUMEROUS REVERSIBLE ERRORS IN ITS EVIDENTIARY RULINGS AT THE GUILT-INNOCENCE PHASE OF THE TRIAL?

¶58. Edwards asserts it was error for the trial court to sustain the State's objection to questioning of Investigator Kufel by defense counsel concerning whether he believed Edwards' confession was truthful.

¶59. "A trial judge is allowed considerable discretion as to the relevancy and admissibility of evidence and, unless his judicial discretion is abused, this Court will not reverse his ruling." *Lewis v. State*, 573 So. 2d 719, 722 (Miss. 1990) (*citing Shearer v. State*, 423 So. 2d 824 (Miss. 1983)).

¶60. In *United States v. Dotson*, 799 F.2d 189 (5th Cir.1986), interpreting F.R.E. 701, it was held reversible error to allow government agents to offer opinions to the truthfulness of the defendant and his witnesses where those opinions were based solely on the agent's investigation. The *Dotson* Court stated:

> In the absence of some underlying basis to demonstrate that the opinions were more than bare assertions that the defendant and his witnesses were persons not to be believed, the opinion evidence should not have been admitted.
>
> . . . . .
>
> We do not hold that government agents may never testify as to the truthfulness of a defendant or defense witnesses. Nor do we hold that a government agent's opinion of a witness's character may never be based exclusively on what the agent learned on an official investigation. But the fact that one has conducted an investigation of the defendant, has known the defendant, or has had minimal contact with defendant's witnesses is not a sufficiently reliable basis under Rules 608(a) and 701 for that witness, over objection, to put before the jury the opinion that they are liars.

799 F.2d at 193-94.

¶61. In light of *Dotson*, this Court finds that the trial court was correct in sustaining the State's objection. The lay opinion testimony of Investigator Kufel was inadmissible. He, in essence, would have told the jury whether it was to believe the confession of Edwards. "There are two reasons that this type of testimony is unacceptable. First, it is more prejudicial than probative; second, it is not based on first hand knowledge." *Rose v. State*, 556 So. 2d 728, 733 (Miss. 1990). In the case sub judice, defense counsel attempted to elicit the opinion of Kufel as to whether Edwards was telling the truth when Edwards admitted to shooting Tony Roberts. There is a very real danger that, due to his position as a law enforcement officer, he might unduly influence the jury when the time came to evaluate the testimony of the other witnesses. Thus, the trial judge acted completely within his discretion when he sustained the State's objection. There is no merit to this assignment of error.

¶62. In addition, at the close of the guilt phase, defense counsel submitted an instruction informing the jury that it was to determine the credibility of Edwards' statements. The trial court refused this submitted instruction. Edwards argues that he had a due process right to have the jury instructed that it was to determine the weight and credibility of his statements. It is important to note that the trial judge did instruct the jury that:

> As sole judges of the facts in this case, your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are

required and expected to use your good common sense and sound honest judgment in considering and weighting the testimony of each witness who has testified in this case.

Therefore, the jury was instructed as to credibility of testimony and witnesses which included testimony as to Edwards' confession. There is no merit to this assignment of error.

## B.

¶63. Edwards contends the trial court committed reversible error in overruling defense counsel's objection when the prosecution bolstered the testimony of Charlie McCree by asking him whether his testimony at the trial of Kelvin Jordan was consistent with his testimony at Edwards' trial.

¶64. On cross-examination, defense counsel attempted to impeach McCree about prior statements and that his story was recently fabricated for favorable parole treatment. On re-direct the prosecutor brought out that he gave essentially the same testimony long before that day. No actual prior statements or testimony was introduced, merely the fact that he had testified consistently long before Edwards' trial.

¶65. This type of testimony of prior consistent statements is permissible on re-direct. This Court has held that when a witness has been impeached by prior inconsistent statements and either denied or explained those statements, examination regarding prior consistent statements on re-direct is admissible. *White v. State*, 616 So. 2d 304, 308 (Miss. 1993). Under the facts of this case, this Court perceives no error in the trial court's admission of the testimony in question.

## C. and D.

¶66. Edwards also assigns as error the trial court's exclusion of testimony of Sheriff Cross regarding whether Jordan was going to plead guilty to arson at one time. Counsel for Edwards hoped to elicit testimony that like Edwards, Jordan had at one time entered a guilty plea to the arson of Tony's vehicle. The State objected to this testimony. The trial court sustained the objection. Edwards also asserts as error the exclusion of certain testimony of Mark Holloway and Detective Kufel. The State objected to specific questions as being hearsay. The trial judge sustained the objections.

¶67. A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless this Court finds the judge abused this discretion so as to be prejudicial to the accused, it will not reverse this ruling. *Fisher v. State*, 690 So. 2d 268, 274 (Miss. 1996). There is no evidence in the record of prejudice to Edwards as result of the trial court sustaining the State's objections. There was no abuse of discretion in this ruling.

## E.

¶68. Edwards contends the trial court committed reversible error in not sustaining the defense counsel's objection when Detective Kufel testified that Jordan told the police that Edwards shot the victims. Edwards asserts that Kufel's testimony was hearsay.

¶69. However, as soon as defense counsel objected to Kufel's testimony, the State told the trial judge that it would rephrase the question. The trial judge also stated that the State was to rephrase the question, which in a sense amounted to the trial judge sustaining defense counsel's objection to the question and answer. The State did not pursue more of an answer and went on to another line of questioning.

¶70. The answer was not responsive to the State's question, the trial judge asked the State to rephrase the question, and it does not constitute reversible error. ***Brown v. State***, 690 So. 2d 276, 288 (Miss. 1996) (*citing **Foster v. State***, 639 So. 2d 1263, 1282 (Miss.1994) (error cured by trial court's sustaining appellant's objection)).

## F.

¶71. Edwards also assigns as error the trial court's permitting the State in its rebuttal examination of Sheriff Cross to adduce evidence that Holloway, in his statement to the police, stated that he saw a .380 caliber gun at Edwards' trailer on Saturday, October 8, 1995. He asserts that this testimony was not responsive to any matter explored on cross-examination and, therefore, was improper rebuttal.

¶72. However, the record shows that the question to which defense counsel objected on State's re-direct was asked in reference to a statement admitted on direct. Furthermore, such questioning as to what was in or not in the statement was proper re-direct based upon defense counsel's cross-examination:

> Q. In that taped statement, did Mark Holloway tell you what type of weapon was used by anybody?

> A. I don't recall.

¶73. The trial court has broad discretion in allowing or disallowing redirect examination of witnesses. When "'the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on rebuttal is unquestionably entitled to elaborate on the matter.'" ***Hart v. State***, 639 So. 2d 1313, 1317 (Miss.1994) (*quoting **Hogan v. State***, 580 So. 2d 1275, 1278 (Miss.1991) (*quoting **Crenshaw v. State***, 520 So. 2d 131, 133 (Miss.1988))). The State's questions and the testimony elicited were well within the bounds of proper cross-examination, and there is no merit to this assignment.

## G.

¶74. Edwards also argues that it was error for the trial court to admit photos of Tony and Codera which were taken before their death. Edwards contends it was highly prejudicial to allow the jury to view these photos.

¶75. Photographs of the deceased in homicide cases are admissible "'so long as introduction of the photograph serves some legitimate, evidentiary purpose.'" ***Walker v. State***, 671 So. 2d 581, 601 (Miss. 1995) (*quoting **May v. State***, 199 So. 2d 635, 640 (Miss. 1967)). In ***Bullock v. State***, 391 So. 2d 601 (Miss. 1980), this Court held that admitting a high school photograph of a victim prior to death is not an abuse of discretion. ***Bullock***, 391 So. 2d at 609. The photographs in the case sub judice were admitted for the legitimate purpose of identifying the victims. See ***Evans v. State***, 422 So. 2d 737, 743 (Miss. 1982). Moreover, they were shown to one witness, Laura Bradley, who is Codera Bradley's aunt. Ms. Bradley was familiar with the appearance of the victims before their death. She testified the photos shown to her were accurate representations of the victims before their death. Thus, this Court does not find the trial judge abused his discretion in admitting the pictures for the limited purpose of identification.

## H. and I.

¶76. Edwards asserts that the circuit court erred in admitting photographs into evidence which he contends were gruesome and served only to prejudice and inflame the jury. The photographs he is speaking of are

Exhibits No. 23, 24, 27 and 28 which were entered into evidence in conjunction with the testimonies of forensic scientist Melissa Schoene and forensic pathologist Steven T. Hayne.

¶77. The admissibility of photographs rests within the sound discretion of the trial court. *Jackson v. State*, 684 So. 2d 1213, 1230 (Miss.1996); *Griffin v. State*, 557 So. 2d 542, 549 (Miss.1990); *Mackbee v. State*, 575 So. 2d 16, 31 (Miss.1990); *Boyd v. State*, 523 So. 2d 1037, 1040 (Miss.1988). Moreover, the decision of the trial judge will be upheld unless there has been an abuse of discretion. *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995). The "'. . .discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.'"*Hart v. State*, 637 So. 2d 1329, 1335 (Miss.1994) (*quoting Noe v. State*, 616 So. 2d 298, 303 (Miss.1993)).

¶78. The two guidelines for admission of "gruesome" photographs, as given in *McNeal v. State*, 551 So. 2d 151 (Miss.1989), are "(1) whether the proof is absolute or in doubt as to the identity of the guilty party, as well as (2) whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury." *McNeal v. State*, 551So. 2d at 159. Furthermore, in *Parker v. State*, 514 So. 2d 767 (Miss.1986), this Court stated, "Some 'probative value' is the only requirement needed to buttress a trial judge's decision to allow photographs into evidence." *Parker v. State*, 514 So. 2d at 771.

¶79. In *Westbrook v. State*, 658 So. 2d 847 (Miss.1995), this Court found that photographs of a victim have evidentiary value when they aid in describing the circumstances of the killing, *Williams v. State*, 354 So. 2d 266 (Miss.1978); describe the location of the body and cause of death, *Ashley v. State*, 423 So. 2d 1311 (Miss.1982); or supplement or clarify witness testimony, *Hughes v. State*, 401 So. 2d 1100 (Miss.1981). *Westbrook v. State*, 658 So. 2d at 849.

¶80. The photographs at issue are not attractive, but they accurately depict the wounds inflicted upon the victims and the location and posture of the bodies at the scene of the crime. Specifically, these photos show the entrance and exit wounds to the heads of the victims. In fact, Dr. Hayne made reference to each photo and the wounds for the benefit of the jury regarding the issue of cause of death. Also, Dr. Schoene, who investigated the crime scene at the time the bodies were discovered, made reference to the photos which displayed the bodies as they were found in the woods. The photos were corroborative with testimony of the witnesses and thus, were relevant.

¶81. Also, an important legal issue in this case was proving that the murders occurred during the commission of a robbery. The jury must make this finding in order for these murders to rise to the level of capital murders. Dr. Schoene testified that Tony was found with his pockets turned inside out and his shoes missing. Exhibits 23 and 24 clearly depict this observation and is probative of the issue of whether Tony was robbed by the defendants.

¶82. Furthermore, after hearing detailed argument as to the admissibility of these photographs, the trial court specifically found "all 3 of these photographs are probative to the issues involved in this case. And under 403, they're all 3 more probative than prejudice. So your objection will be overruled, but your record is made." It is clear from the record that the judge reviewed the photographs and carefully weighed the probative value of the evidence against its potential of prejudicing the defendant by inflaming minds of the jury. This Court finds that the trial judge was correct in finding "[s]ome 'probative value'" in each of these photographs. *Holland v. State*, 705 So. 2d 307, 350 (Miss. 1997). Additionally, since the photographs

were deemed necessary evidence to corroborate the testimony of the witnesses, the judge could conclude that the pictures were not offered as a "ploy" on the part of the prosecutor to arouse the passion and prejudice of the jury. Accordingly, the lower court did not abuse its discretion in admitting the photographs in both the guilt and sentencing phases of Edwards' trial.

## VIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ERRONEOUSLY INSTRUCTING THE JURY DURING THE PROCEEDINGS?

¶83. In this assignment of error, Edwards asserts as error several instructions given from the bench.

¶84. First, Edwards challenges the giving of instruction C-13 which read:

> The Court instructs the Jury that an accomplice is a person who joins the principal actor, with a common intent to commit the crime in question. An accomplice is guilty to the same extent as the principal actor. If more than one person join together to commit robbery and as a result of such robbery, one of the victims is killed during the commission of the robbery, then each person involved in the robbery is criminally responsible for that death.

Edwards asserts that this is not a correct statement of Mississippi law, and relieved the State of its obligation to prove all elements of capital murder and robbery. Edwards cites *Hornburger v. State*, 650 So. 2d 510 (Miss. 1995) to support his argument.

¶85. This Court's standard of review in looking at jury instructions was stated in *Coleman v. State*, 697 So. 2d 777 (Miss. 1997). "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997) (*quoting* *Collins v. State*, 691 So. 2d 918 (Miss. 1997)).

¶86. The instruction in *Hornburger* is readily distinguishable from Instruction C-13. The instruction in *Hornburger* allowed the jury to find the defendant guilty of burglary if it found that he had done **any act which was merely an element** of burglary, without having to also find that he committed acts for all elements of the crime. *Hornburger v. State*, 650 So. 2d at 514. (Emphasis added). The instruction in this case is not analogous to the one held to be improper, yet harmless, in *Hornburger*. Instruction C-13, in the case sub judice does not say that only one element is required to find Edwards guilty of the underlying felony and of capital murder. Furthermore, when Instructions C-8, C-9 and C-11 (cited in Issue III) are read in conjunction with C-13 the trial court correctly placed the burden on the State to prove beyond a reasonable doubt every element of the underlying felony with which Edwards was charged and for the charge of capital murder. *Doss v. State*, 709 So. 2d 369, 379 (Miss. 1996). Therefore, there is no merit to this assignment of error.

¶87. Furthermore, Edwards argues for the first time on appeal the instructions of the trial court during jury qualification as violating his rights under the United States Constitution and the Mississippi Constitution. The instruction read as follows:

> Every defendant at this stage of the trial proceedings is presumed to be innocent. And this presumption carries through the trial until convicted by a jury.

> The way an indictment is obtained is the State, that's the district attorney's office, presents only its side

of the case to the grand jury. And after having heard the State's case, if the grand jury makes a finding that there is probable cause that a felony has been committed and there's probable cause that the defendant committed the crime, then they return what we call an indictment . . . .

However, there was no objection to this instruction made at Edwards' trial or in his Motion for a New Trial and thus, this issue is barred from review. *Jackson v. State*, 684 So. 2d 1213, 1226 (Miss. 1996); *Chase v. State*, 645 So. 2d 829, 854 (Miss. 1994).

¶88. Lastly, Edward asserts the trial court misstated the law by stating during voir dire, "During the first state of the trial, it will be the responsibility of the jury to determine whether the defendant, Frontrell Edwards, is guilty or not guilty of capital punishment." However, once again there was no objection made by defense counsel, and this issued is barred from review. *Jackson v. State*, 684 So. 2d at 1226; *Chase v. State*, 645 So. 2d at 854.

## IX. WHETHER THE TRIAL COURT ERRED IN PERMITTING DEFENSE COUNSEL TO WAIVE EDWARDS' RIGHT TO BE PRESENT AT THE SUPPRESSION HEARING?

¶89. Edward contends as his next assignment of error that the trial judge improperly allowed the defense attorney to waive Edwards' presence at the suppression hearing on February 11, 1997.

¶90. It is true that no important proceeding of a criminal trial may be held without the presence of the defendant or his counsel. *Strickland v. State*, 477 So. 2d 1347, 1349 (Miss.1985); *Allen v. State*, 384 So. 2d 605, 607 (Miss.1980). However, "[b]oth need not be present; where the defendant is represented by counsel, the attorney may represent the defendant at any critical stage in the proceedings, and the defendant's absence will not violate his constitutional rights." *Carr v. State*, 655 So. 2d 824, 850-51 (Miss. 1995) (*quoting Samuels v. State*, 567 So. 2d 843, 845 (Miss. 1990)).

¶91. "An exception to this general rule is where the presence of the defendant is necessary to prevent prejudice to him." *Carr v. State*, 655 So. 2d at 850 (*quoting Samuels*, 567 So. 2d at 845.

¶92. Although it is implicit in the present case that Edwards knew of the hearing, there needs to be documentation in the record of a defendant's knowledge or that a defendant has been advised of a hearing conducted outside of his presence. In the case *sub judice* Edwards' counsel made the waiver and furthermore, Edwards raised no example of prejudice that he suffered as a result of not being present at this suppression hearing. He has not asserted that he could have interjected additional information which would have resulted in different results in those proceedings, nor has he indicated, in any way, that consultation with his counsel during those proceedings would have been beneficial. Since Edwards was represented adequately by defense counsel at these proceedings, and since he has not demonstrated prejudice resulting from his absence, this Court finds this assertion to be without merit.

## X. WHETHER MISSISSIPPI'S CAPITAL PUNISHMENT SCHEME IS UNCONSTITUTIONAL AS APPLIED TO THIS CASE AND ON ITS FACE?

¶93. Edwards' next assignment of error is that the Mississippi capital punishment scheme is unconstitutional on its face and as applied to the case *sub judice*.

### A. Application to the Case Sub Judice

¶94. Edwards takes offense at the word "or" and maintains that the verdict's disjunctive form suggests a lack of unanimity on any one particular fact. He cites *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985) and *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), for the proposition that where a jury could have based its verdict on two separate legal theories, the reviewing court cannot attempt to guess on which theory the verdict rests.

¶95. However, as the State points out, Edwards waived this assignment of error by failing to object to the form of verdict at trial. *Conner v. State*, 632 So. 2d 1239, 1273 (Miss. 1993) (*citing Cole v. State*, 525 So.2d 365, 369 (Miss.1987) (rule that preservation of error requires contemporaneous objection is applicable to capital cases)) . Furthermore, the word "or," is a mere scrivener's error which the jury copied into its verdict. *Conner*, 632 So. 2d at 1273. There is no merit to this assignment of error.

## B. Facially Unconstitutional

¶96. Edwards also argues that Mississippi's statutory scheme for capital punishment is unconstitutional on its face. Specifically, he argues Miss. Code Ann. § 99-19-101, Mississippi's capital murder statute, is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution. The ground assigned in this challenge is that the statute permits the death penalty for certain felony murders without a finding of intent to kill, but does not include premeditated murder.

¶97. This error has been asserted before this Court in *Gray v. State*, 351 So. 2d 1342, 1344 (Miss.1977) , and *Bell v. Watkins*, 381 So. 2d 118, 124 (Miss.1980), but was denied without analysis. However, this Court recently addressed this issue in *Holland v. State*, 705 So. 2d 307 (Miss. 1997) in which the Court concluded:

> The constitutional challenge asserted here does not offend the Eighth Amendment of the United States Constitution, and this conclusion has been long ago held by the United States Court of Appeals for the Fifth Circuit in *Gray v. Lucas*, 677 F.2d 1086 (5th Cir.1982), reh'g denied, 685 F.2d 139 (5th Cir.1982), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815, reh'g denied, 462 U.S. 1124, 103 S.Ct. 3099, 77 L.Ed.2d 1357 (1983) .

*Holland v. State*, 705 So. 2d at 320.

¶98. Edwards also argues that the statute offends due process and equal protection rights of the Fourteenth Amendment. This Court quoted *Gray* when addressing this issue:

> The basis of Gray's claim under both equal protection and due process is that there is no rational basis for imposing the death penalty on people who commit murder during the course of a felony but not imposing it on people who commit especially atrocious simple murder. However, Mississippi could have rationally decided that felony murders pose a problem different from atrocious simple murders and could have sought to cure the felony murder problem first. Alternatively, the legislature could have decided that the death penalty would be more effective in deterring felony murders since an experienced felon is more likely to assess the consequences of his acts. Conversely, it could have rationally determined that the death penalty might not effectively deter atrocious simple murders since such people are likely as a group to act on passion or impulse and thus be unmindful of the consequences of their crime. In short, the legislature could have rationally decided that the one class of murders either presented a different problem from the other or that the death penalty would be

more effective deterrent [sic] to felony murders than atrocious simple murders.

*Gray*, 677 F.2d at 1104.

*Holland*, 705 So. 2d at 320. Considering all these factors, we agree with the previous holding in *Holland* that the constitutional challenge to Mississippi's capital murder statutory scheme is without merit.

### XI. WHETHER EDWARDS WAS DENIED A FAIR TRIAL BEFORE AN IMPARTIAL JURY; AND WHETHER THE TRIAL COURT ERRED IN DENYING EDWARDS' REQUEST FOR INDIVIDUAL, SEQUESTERED VOIR DIRE?

¶99. Edwards asserts that the trial court's denial of his pre-trial request of an individual, sequestered voir dire was error, given the publicity and circumstances in this case. He further asserts that because of this error he was denied a fair trial by an impartial jury. The manner in which voir dire in criminal cases will be conducted is governed by Rule 3.05 of the Mississippi Uniform Circuit and County Court Rules which provides:

> In the voir dire examination of jurors, the attorney will question the entire venire only on matters not inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked.

¶100. The decision to utilize an individualized, sequestered voir dire is a matter within the sound discretion of the trial judge. *Carr v. State*, 655 So. 2d 824, 842 (Miss.1995). While not requiring the use of sequestered voir dire, Rule 5.02 of the Uniform Criminal Rules of Circuit Court Practice does, within the court's discretion, allow it, but only on good cause shown. *McFarland v. State*, 707 So. 2d 166, 169-70 (Miss. 1997). This Court has further held, that the rule does not require more than what it states on its face, and that trial judges who denied individual sequestered voir dire acted within their discretion granted by the rule. *Carr*, 655 So. 2d at 842; *Russell v. State*, 607 So. 2d 1107, 1110 (Miss.1992); *Hansen v. State*, 592 So. 2d 114, 126 (Miss.1991).

¶101. The trial court in this case allowed individual sequestered voir dire when warranted during jury selection. It cannot be said that the trial court abused its discretion in denying individual sequestered voir dire of each and every prospective juror. Furthermore, the trial judge inquired of the entire venire concerning pretrial publicity and knowledge of the case. Several jurors raised their hands, and the judge questioned them further to determine whether their knowledge might affect or prejudice them in any way. When the jurors indicated that they could not be fair and impartial, they were later excused. The attorneys then conducted extensive examination of the venire regarding exposure to pretrial information, and every juror who indicated an inability to be fair and impartial was excused. This Court finds that the trial court did not abuse its discretion in denying Edwards' motion for individual sequestered voir dire and Edwards was not denied a fair trial by an impartial jury. Consequently, there is no merit to this assignment of error.

### XII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE PROSECUTION TO OBTAIN PLEDGES FROM THE PROSPECTIVE JURORS TO CONVICT EDWARDS AND SENTENCE HIM TO DEATH AND BY PRECLUDING THE DEFENSE FROM ASKING PERMISSIBLE QUESTIONS DURING VOIR DIRE?

¶102. Edwards asserts that it was error for the trial judge to allow the State to ask the jury questions regarding a conviction of guilty for capital murder and sentencing him to death based on the facts of this case.

¶103. Edwards made no objection at trial to the prosecution's voir dire, so this issue is barred on appeal. *Carr*, 655 So. 2d at 853. Notwithstanding any procedural bar, this issue will be addressed on the merits.

¶104. First, it is noted that Rule 5.02 of the Mississippi Uniform Criminal Rules of Circuit Court Practice and the cases Edwards cites in his favor stand for the general rule that it is "reversible error to ask a juror during voir dire to commit to returning a particular verdict." *Stringer v. State*, 500 So. 2d 928, 938 (Miss.1986); Miss. U.Crim. R.Cir. C.P. 5.02. The standard of review for determining the impropriety of a question is abuse of discretion. *Harris v. State*, 532 So. 2d 602, 606 (Miss.1988).

¶105. Edwards makes no meaningful argument that the State's questions during voir dire reached the level of reversible error as was the case in *Stringer v. State*, 500 So. 2d 928, 938-40 (Miss.1986). In that case, the prosecutor asked the jurors if they could or could not vote for the death penalty under certain circumstances. *Stringer*, 500 So. 2d at 938. This Court held that since the prosecutor did not specifically secure commitments from the jury to vote for the death penalty during voir dire, no per se reversible error occurred, but the conduct combined with other factors amounted to reversible error. *Id.*

¶106. Furthermore, this Court finds that the complained of questions were not designed to extract a promise from these jurors, under oath, that they would certainly find Edwards guilty or they would vote for the death penalty given a specific set of circumstances. *Lester v. State*, 692 So. 2d 755, 773-74 (Miss. 1997). The questions which the State asked during voir dire in this case all properly informed the jury of the law. There is no indication of an unconstitutionally impaneled jury. This assignment is rejected as being without merit. *Foster v. State*, 639 So. 2d 1263, 1283-84 (Miss. 1994).

¶107. Edwards also asserts that it was error for the trial judge to sustain the State's objections to defense counsel's questioning of prospective jurors. After the State objected to defense counsel misstating the law, the trial judge, stated:

> [Y]ou can't argue the instructions, because there is a specific procedure that the jury will follow step by step. It's very clear, and I don't think it's proper for you to off the cuff try to tell them what the law is at this point.

As stated previously, the standard of review for determining the impropriety of a question is abuse of discretion. We do not find that the trial judge abused his discretion in refusing to allow defense counsel to question potential jurors as to what is the law, and there is no merit to this assignment of error.

### XIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT EDWARDS' CHALLENGES FOR CAUSE?

¶108. In this allegation of error, Edwards asserts that the trial court erred in denying three specific challenges for cause. Edwards contends that these three venire members demonstrated their clear bias and inability to be impartial. Therefore, the trial judge committed reversible error when he refused to strike Brashier, Freeman and Pearson for cause.

¶109. The loss of a peremptory challenge, however, does not constitute a violation of the constitutional right

to an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his constitutional rights. *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988).

¶110. In *Mettetal v. State*, 615 So. 2d 600 (Miss. 1993), this Court held:

> This Court has explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror was forced by the trial court's erroneous ruling to sit on the jury. *Chisolm v. State*, 529 So. 2d 635, 639 (Miss.1988). Mettetal cannot make such a showing in the case at bar because he did in fact strike No. 58 peremptorily. The venireman in question did not in fact sit on the jury.

*Id.* at 603 (*quoting* *Mettetal v. State*, 602 So. 2d 864, 869 (Miss.1992)). *See also* *Davis v. State*, 660 So. 2d 1228, 1243 (Miss. 1995).

¶111. Likewise, in this case, Jurors Brashier and Freeman were peremptorily stricken and Edwards used only 9 of his 12 peremptory challenges. Further, Juror Pearson was never reached. Edwards does not argue, much less make a showing, that an incompetent juror was forced to sit on the jury. Thus, this assignment of error is without merit.

### XIV. WHETHER THE TRIAL COURT ERRED IN REFUSING EDWARDS' PROPOSED LESSER-INCLUDED OFFENSE INSTRUCTION ON THE CODERA BRADLEY MURDER?

¶112. Edwards complains that the trial court erred in not giving defense instruction D-3, a lesser-included offense instruction which read:

> The court instructs the jury that if you find that the State of Mississippi has failed to prove any one or more of the essential elements of capital murder involving Cordera Bradley beyond a reasonable doubt, then it is your duty to find the defendant not guilty of capital murder of Cordera Bradley. If you find the defendant not guilty of the capital murder of Cordera Bradley, you may continue your deliberations to determine whether or not the defendant is guilty of murder.
>
> If you find from the evidence a reasonable doubt that:
>
> 1. On or about the 5th day of October, 1995 in Clarke County, Mississippi;
>
> 2. The defendant, Frontrail Edwards, did, along with Kelvin Jordan, kill Cordera Bradley, a human being, without authority of law by any means or in any manner;
>
> 3. By deliberate design to effect the death of Cordera Bradley;
>
> then it is your sworn duty to find the defendant guilty of murder under Count I.
>
> Should the State of Mississippi fail to prove any one or more of the essential elements of murder beyond a reasonable doubt then you shall find the defendant not guilty of murder under Count I.

The State asserts that this assignment of error is procedurally barred for lack of objection to this refusal.

The state finds its authority for this proposition in *Nicholson ex. rel. Gollott v. State*, 672 So. 2d 744, 752 (Miss.1996). However, this Court explained in *Duplantis v. State*, 708 So. 2d 1327 (Miss. 1998) that:

> Although in dicta we indicated that we could impose a procedural bar, we did not intend to overrule existing caselaw and therefore require litigants to object to the denial of instructions that they themselves have offered. Prior precedent of this Court makes it clear that an issue involving the denial of a requested jury instruction:
>
> . . . is procedurally preserved by the mere tendering of the instructions, suggesting that they are correct and asking the Court to submit them to the jury. This in and of itself affords counsel opposite fair notice of the party's position and the Court an opportunity to pass upon the matter. When the instructions are refused, there is no reason why we should thereafter require an objection to the refusal unless we are to place a value upon redundancy and nonsense. *Carmichael v. Agur Realty Co., Inc.*, 574 So. 2d 603, 613 (Miss.1990)

*Duplantis*, 708 So. 2d at 1339-40. Relying on *Duplantis*, we will address this issue on the merits.

¶113. Edwards contends that the jury should have been instructed concerning the lesser-included offense of murder. The trial court denied instruction D-3 because it found no evidence to warrant giving it. Edwards contends the trial court erred in refusing D-3 because the jury could have convicted him of murder if it found the killing of Codera Bradley took place at some time other than during the commission of robbery.

¶114. In *Conner v. State*, 632 So. 2d 1239 (Miss.1993), this Court in discussing when lesser included offense instructions should be granted, stated:

> [a] lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).

*Conner*, 632 So. 2d at 1254 (*quoting McGowan v. State*, 541 So. 2d 1027, 1028 (Miss.1989)).

¶115. A lesser included instruction was not appropriate. This Court suggests that Edwards' argument that the jury could have disbelieved that a robbery was taking place when Codera was killed and thus found Edwards guilty only of murder is absurd. In this case, Codera is dead. The unrefuted testimony is that Edwards and Jordan robbed Tony at gunpoint while his son, Codera was in the vehicle. There is further testimony that they drug Tony into a field where they soon after shot Codera in the back of the head. There are pictures of the crime scene evidencing that Tony's pockets had been emptied at this location, further demonstrating a continued robbery. Lastly, Edwards and Jordan drove off in Tony's car completing the robbery of Tony's vehicle. Applying the above test stated in *Conner*, it is clear that no rational jury could find Edwards guilty of the lesser included offense of murder and not guilty of capital murder. Miss. Code Ann. § 97-3-19(2)(e)(1994) defines as capital murder, any murder "[w]hen done with or without any design to effect death, by any person engaged in the commission of ... robbery ... or in any attempt to commit such felon[y]."

¶116. Here, there is simply nothing to indicate that Codera was killed in any context but an armed robbery.

Edwards admitted in his confession that Jordan and he discussed committing a robbery. They were both armed. The only evidence presented by both the State and Edwards pointed to an armed robbery. This Court has often and consistently stated that there must be an evidentiary basis for lesser included instructions. *Harveston v. State*, 493 So. 2d 365, 375 (Miss.1986); *Fairchild v. State*, 459 So. 2d 793, 800 (Miss.1984); *Colburn v. State*, 431 So. 2d 1111, 1114 (Miss.1983); *Johnson v. State*, 416 So. 2d 383, 388 (Miss.1982). Thus, even taking all the evidence in the light most favorable to Edwards, no rational jury could have disbelieved the armed robbery element of the State's case and also found Edwards guilty of murder. Necessarily then, under Miss. Code Ann. § 97-3-19(2)(e), the murder of Codera was capital murder if it was anything. Therefore, there is no merit to this assignment of error.

### XV. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO REFER TO, AND PRESENT EVIDENCE OF, ALLEGED ADMISSIONS BY EDWARDS PRIOR TO PROVING CORPUS DELICTI?

¶117. Edwards contends that it was error for the trial court to allow the State to present evidence of inculpatory statements before the prosecution had proved corpus delicti. However, as to Edwards' claims about statements made in trial, there was no objection made by defense counsel. Thus, this claim is procedurally barred from review. *Jackson*, 684 So. 2d at 1226; *Chase*, 645 So. 2d at 854.

¶118. Notwithstanding the procedural bar, we will address this issue on the merits. Edwards cites *Burkhalter v. State*, 302 So. 2d 503 (Miss.1974), for the "general . . . rule that the prosecution should first submit evidence tending to prove the corpus delicti before introducing into evidence a confession made by an accused person." *Burkhalter v. State*, 302 So. 2d 503, 505 (Miss. 1974). That case goes on to say, however, that "the rule is not without some flexibility as to the order of proof in conjunction with confessions and independent proof of corpus delicti." *Burkhalter*, 302 So. 2d at 505. The Court in *Burkhalter* found no error in admitting the defendant's confession prior to admitting a stipulation on cause of death. *Burkhalter*, 302 So.2d 505. The Court emphasized not the order of proof but the rule that "'the state must establish corpus delicti aliunde an out of court confession of the crime with which the accused is charged" and must present sufficient evidence to establish "that a real and not an imaginary, crime has been confessed.'" *Id.* at 505 (*quoting Brooks v. State*, 178 Miss. 575, 173 So. 409 (1937)). See also *Miskelley v. State*, 480 So. 2d 1104, 1107-08 (Miss.1985); *Poole v. State*, 246 Miss. 442, 150 So. 2d 429 (1963). In these cases it is not the order of proof which is crucial but the rule that a confession may not be treated as sufficient to establish the corpus delicti. Thus, there is no merit to this assignment of error.

### XVI. WHETHER THE TRIAL COURT ERRED IN GIVING PROSECUTION'S SENTENCING INSTRUCTIONS CS-1, CS-2, CS-3, AND CS-4?

¶119. Edwards next asserts that the trial court erred in granting Instructions CS-1, CS-2, CS-3 and CS-4. He contends that these instructions were improper and violated his statutory rights and his rights under the Sixth, Eighth and Fourteenth Amendments and the corresponding provision of the Mississippi Constitution.

#### A. Sentencing Instructions CS-2 and CS-3

#### 1.

¶120. Edwards argues that the trial court erred in allowing the jury to consider the aggravating circumstance of "avoiding or preventing lawful arrest" in Sentencing Instruction CS-2 and CS-3. Edwards argues that the

trial court should not have submitted these two instructions as there was insufficient evidence presented by the State of the aggravating circumstance, "[w]hether the capital offense was committed for the purpose of avoiding arrest." The defense insists that there is no reason to believe that Edwards shot Codera and Tony to avoid lawful arrest. Edwards further asserts that this aggravating circumstance is unconstitutionally vague and overbroad.

¶121. Each case must be decided on its own peculiar fact situation. "If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance." *Brown v. State*, 682 So. 2d 340, 355 (Miss. 1996) (*citing Leatherwood v. State*, 435 So. 2d 645, 651 (Miss. 1983)).

¶122. In the case sub judice, there was evidence that the killings were done to avoid arrest. Edwards and Jordan burned Tony's vehicle which gave the jury an inference that Edwards destroyed evidence linking him to the murders. This is legally sufficient evidence to support giving the avoiding arrest aggravating circumstance for the jury to consider. Therefore, there is no merit to this assignment of error.

## 2.

¶123. Edwards contends that Instructions CS-2 and CS-3 failed to inform the jury what it should do if it found that the mitigating circumstances outweighed the aggravating circumstances. However, this Court recently approved this same type of instruction in *Doss v. State*, 709 So.2d 369, 396 (Miss. 1996). See also *Conner v. State*, 632 So.2d 1239, 1278 (Miss.1993). As a result, this issue is without merit.

## 3.

¶124. Edwards argues that the catch-all language utilized in Instructions CS-2 and CS-3 would allow reasonable jurors to conclude that they had discretion to ignore non-statutory mitigating circumstances when deciding Edwards' fate. The language Edwards complains of is as follows:

> (7) Any other matter, any other aspect of the Defendant's character or record, any other circumstance of the offense brought to you during the trial on this cause which you, the Jury, deem to mitigate on behalf of the Defendant.

Edwards relies on *Eddings v. Oklahoma*, 455 U.S. 104 (1982), in arguing that sentencers in a capital case may not give mitigating circumstances no weight by excluding such evidence from their deliberations.

¶125. Contrary to Edwards' argument, this language does not authorize the jury to ignore nonstatutory elements of mitigation but rather, instructs the jury that it may consider additional mitigating evidence and therefore is in conformity with *Eddings* and Miss. Code Ann. § 99-19-101(1)(1994), which states that any relevant mitigating evidence introduced on behalf of the defendant may be considered by the jury.

¶126. Moreover, this Court has approved instructions containing this language in *Carr v. State*, 655 So. 2d 824, 855 (Miss.1995), *Ladner v. State*, 584 So. 2d 743, 761 (Miss.1991), *Turner v. State*, 573 So. 2d 657, 668 (Miss.1990), and expressly held in *Neal v. State*, 451 So. 2d 743, 761n.11 (Miss.1984), that catch-all language regarding mitigating factors should be employed in every case. This issue is without merit.

**4.**

¶127. Edwards contends that reasonable hypothetical jurors read these instructions to require unanimity in the finding of mitigating circumstances presented for their consideration. Edwards argues that because the instructions use the word "you" (including "you the jury" used once) to define the jury, it would follow that the jury would assume that it was required to find the mitigating circumstances unanimously. In *Shell v. State*, 554 So. 2d 887 (Miss. 1989), this Court addressed this very issue holding that since "unanimous" was only found in section for aggravating circumstances there was no corresponding requirement for the mitigating circumstances. *Shell v. State*, 554 So. 2d 887, 905 (Miss. 1989), rev'd on other grounds, 498 U.S. 1 (1990). In the present case, there is no such unanimity requirement for mitigating circumstances in these instructions. Instructions CS-2 and CS-3 required a unanimous finding beyond a reasonable doubt of aggravating circumstances. It cannot be reasonably inferred that the silence of instruction CS-2 as to finding mitigating circumstances would likely cause the jury to assume that unanimity was also a requirement. This assignment of error is without merit.

**5.**

¶128. Edwards contends that Instructions CS-2 and CS-3 erroneously instructed the jury that Edwards had the burden of proving that the mitigating circumstances outweighed the aggravating circumstances. The relevant part of this instruction read:

> Next, to return the death penalty. . ., you must find that the mitigating circumstances - those which tend to warrant the less severe penalty of life imprisonment - do not outweigh the aggravating circumstances - those which tend to warrant the death penalty.

¶129. This argument is worthless. First, the plain language of § 99-19-101 (the statute governing the weighing process of the sentencing phase) requires the jury to find that the mitigating circumstances do not outweigh the aggravating circumstances before sentencing a defendant to death. Miss. Code Ann. § 99-19-101 (1994). Second, this Court has previously r ejected the argument that a shift in the burden of proof occurs from the requirement that the jury find mitigating factors are not outweighed by aggravating factors. *Mack v. State*, 650 So. 2d 1289, 1330 (Miss. 1994). Finally this Court has recently approved this same instruction in *Doss*, 709 So.2d at 396. See also *Conner v. State*, 632 So.2d at 1278. As a result, this issue is without merit.

**6.**

¶130. Edwards argues that Instructions CS-2 and CS-3 failed to require the State to prove beyond a reasonable doubt that there were insufficient mitigating circumstances to outweigh the aggravating circumstances and that the death penalty was the appropriate punishment. However, in *Wiley v. State*, 484 So. 2d 339 (Miss.1986) overruled on other grounds by *Willie v. State*, 585 So. 2d 660 (Miss.1991), this Court addressed this exact issue, stating:

> The majority rule of this Court is that the jurors are required to find the existence of each aggravating circumstance beyond a reasonable doubt, but the jury is not required to find that the aggravating circumstances beyond a reasonable doubt outweigh the mitigating circumstances following the statute.

*Wiley*, 484 So.2d at 352. See also *Chase v. State*, 699 So. 2d 521, 544-45 (Miss. 1997). There is no merit to this assignment of error.

**7.**

¶131. Edwards assigns as error the trial court's instructions to the jury during the sentencing phase that it should consider the detailed circumstances of the offense when making its decision. Edwards bases his position on the fact that at the sentencing phase, the jurors are restricted to hearing and considering evidence related only to aggravating and mitigating circumstances. Each of the sentencing instructions began with the trial court telling the jury that:

> In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the Defendant was convicted, and the character and record of the Defendant himself. You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling. (T. 120, 123).

¶132. The jury instructions are to be reviewed as a whole. *Willie*, 585 So. 2d at 680 (*citing **Roundtree v. State***, 568 So. 2d 1173, 1177 (Miss.1990); ***Shell v. State***, 554 So. 2d 887, 900 (Miss.1989), rev'd on other grounds, 498 U.S. 1 (1990). In considering the instructions in their entirety, it is apparent that the jury was properly instructed in the framework within which it was to consider mitigating and aggravating circumstances.

¶133. Moreover, in ***Ladner v. State***, 584 So. 2d 743 (Miss.1991), the jury was instructed using the same "detailed circumstance" language, which was upheld as a proper instruction. ***Ladner***, 584 So. 2d at 760. See also ***Doss v. State***, 709 So.2d 369, 395-96 (Miss. 1996). This assignment of error is without merit.

### B. Sentencing Instruction CS-1

¶134. Edwards argues that Instruction CS-1 invited the jury to consider non-statutory aggravating factors in violation of Miss. Code Ann. § 99-19-101 and Mississippi case law. Sentencing Instruction CS-1 reads as follows:

> The Court instructs the jury that it must be emphasized that the procedure you must follow is not a mere counting process or a certain number of aggravating circumstances versus the number of mitigating circumstances, rather, you must apply your reason to judgment as to whether this situation calls for life imprisonment or whether it requires the imposition of death in light of the totality of the circumstances present.

¶135. Edwards is correct in stating that this Court has previously held that Miss. Code Ann. § 99-19-101 is clear in limiting the aggravating factors which a trial jury may consider to those specifically listed in subsection 5 of the statute. ***Balfour v. State***, 598 So. 2d 731, 747-48 (Miss.1992) (*citing **Stringer v. State***, 500 So. 2d 928, 941 (Miss.1986) and ***Coleman v. State***, 378 So. 2d 640, 648 (Miss.1979)). However, Instruction CS-1 did not instruct the jury to consider other non-statutory aggravating factors. "It merely informed the jury on the manner in which they were to evaluate those aggravating circumstances which they could consider under the statute." ***Lester v. State***, 692 So.2d 755, 801 (Miss. 1997). As previously stated, taking the instructions as a whole, the jury below was adequately informed that they must limit its consideration to the aggravating circumstances set out in Miss. Code Ann. § 99-19-101. Therefore, this assignment of error is without merit.

## C. Sentencing Instruction CS-4

¶136. Edwards next complains that the Sentencing Instruction CS-4 given by the trial court on the "heinous, atrocious or cruel" (HAC) aggravating circumstance was unconstitutionally vague and overbroad. Sentencing Instruction CS-4 reads as follows:

### INSTRUCTION NO. CS-4

The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.

An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders - - the conscienceless or pitiless crime which is unnecessarily torturous to the victim. If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, then you may find this aggravating circumstance.

Edward believes this instruction is in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

¶137. However, this Court recently held that this exact narrowing instruction on the HAC aggravator satisfied constitutional requirements in *Carr*, 655 So. 2d at 851-52. See also *Conner*, 632 So. 2d 1239, 1269-71 (Miss.1993) (finding same HAC instruction to be constitutional); *Jenkins v. State*, 607 So. 2d 1171, 1181-82 (Miss.1992) (with same holding on same instruction). As there is no basis for reversal on this issue, we find this assignment of error to be without merit.

## XVII. WHETHER THE TRIAL COURT ERRED IN REFUSING EDWARDS' PROPOSED SENTENCING INSTRUCTIONS?

### A. Instruction D-S7

¶138. Edwards next asserts that the trial court, in refusing jury instruction D-S7, denied him the opportunity to inform the jury that if sentenced to death, he would be executed by lethal injection. D-S7 read:

The court instructs the jury that if Frontrail Edwards is sentenced to life imprisonment without the possibility of parole or early release that he will spend the rest of his natural life incarcerated by the Mississippi Department of Corrections.

The court instructs the jury that if you sentence Frontrail Edwards to death, he will [be] executed by lethal injection by the State of Mississippi.

¶139. However, the method of execution is of no concern to the jury. *Jackson v. State*, 684 So. 2d 1213, 1238 (Miss. 1996). "In *Williams v. State*, 445 So.2d 798 (Miss.1984), where the Court found that references to the possibility that the defendant not be sentenced to death are 'wholly out of place' in the

sentencing phase of a capital murder case, it was stated, '[i]t is no more proper for the jury to concern itself with the wisdom of that legislative determination than it is for the jury to consider the Legislature's judgment that death in the gas chamber be an authorized punishment for capital murder.' *Id.* at 813." *Jackson*, 684 So. 2d at 1238-39. Therefore, this assignment of error is without merit.

## B. Instruction D-S1

¶140. Edwards also believes the trial court erred in refusing to give Instruction D-S1 which read:

> The court instructs the jury that a mitigating circumstance does not have to be proved beyond a reasonable doubt to exist. You may find that a mitigating circumstance exists if there is any evidence to support it. Any juror who finds that a mitigating circumstance exists, even if that finding is not unanimous among all jurors, must individually weigh all the mitigating circumstances he or she has found against any aggravating circumstance which a unanimous jury has found to have been proven to exist beyond a reasonable doubt.

¶141. The trial court was correct to deny this instruction as it is cumulative. The jury was already instructed on the weight process according to statutory and case law requirements. There is no error in the denial of a cumulative instruction as a defendant is not entitled to multiple instruction in language he favors. *Walker v. State*, 671 So. 2d 581, 613 (Miss. 1995). See also *Griffin v. State*, 494 So. 2d 376, 381 (Miss. 1986) ("It is elementary that a trial court is not required to give repetitious instructions on a point, even though the instruction may be couched in different language."). Thus, this assignment of error is without merit.

## C. Instruction D-S10

¶142. Edwards also assigns as error the trial court's refusal of Instruction D-S10 which read:

> The court instructs the jury that if you do not agree upon punishment the court will sentence the defendant to life imprisonment without possibility of parole or early release.

He claims that this instruction correctly stated the law according to Miss. Code Ann. § 99-19-103. Miss. Code Ann. § 99-19-103 (1994) provides that "[i]f the jury cannot, within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose a sentence of imprisonment for life."

¶143. However, jury instructions "are not to be read unto themselves, but with the jury charge as a whole." *Carr v. State*, 655 So. 2d 824, 848 (Miss.1995); *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). Instructions CS-2 and CS-3 make clear the options the jury had in returning to the courtroom:

> (1) . . . we . . . unanimously find the Defendant should suffer death.

> (2) We, the Jury, find that the Defendant should be sentenced to life imprisonment without the possibility of parole or early release.

> (3) We, the Jury are unable to unanimously agree on punishment.

Thus, when read as a whole, the jury instructions properly informed the jury that it could return to the courtroom and report that it was unable to agree unanimously on punishment. *Wilcher v. State*, 697 So. 2d 1123, 1136 (Miss. 1997). D-S10 was a cumulative instruction. There is no error in the denial of a cumulative instruction. *Walker v. State*, 671 So. 2d at 613.

Moreover, even if the jury had never been instructed on what would happen if they could not agree, there would have been no error. In *Stringer v. State*, this Court held that the trial judge did not err by failing to inform the jury that, "if they were unable to agree within a reasonable time on the punishment to be imposed, [the defendant] would be sentenced to life imprisonment." *Stringer*, 500 So. 2d 928, 945 (Miss.1986).

*Wilcher v. State*, 697 So. 2d at 1136-37. Therefore, this assignment of error is without merit.

## D. Instruction D-S3

¶144. Edwards asserts that Instruction D-S3 explained to the jurors that under the law, it had to presume that there were no aggravating circumstances and that a life sentence was the appropriate sentence, and that the State had the burden of overcoming these presumptions. Instruction D-S3 read as follows:

Frontrail Edwards enters this trial with the presumption that there are no aggravating circumstances that would warrant a sentence of death, and the presumption that the appropriate punishment in his case would be life imprisonment without parole or the possibility of early release. These presumptions remain with Frontrail Edwards throughout the sentencing hearing and can only be overcome if the prosecution unanimously convinces each of you beyond a reasonable doubt that you should sentence Frontrail Edwards to death . . . .

¶145. However, in *Chase v. State*, 645 So.2d 829 (Miss.1994), where it was asserted that an instruction allowed by the trial court improperly shifted to the defense the burden of proving that mitigating circumstances outweighed aggravating circumstances, this Court flatly rejected the appellant's argument that "a defendant should go into the sentencing phase with a presumption that life is the appropriate punishment." *Chase*, 645 So.2d at 860. This Court finds no merit to this assignment of error.

## E. Instruction D-S4

¶146. Edwards contends that Instruction D-S4 would have informed the jury that a capital murder conviction is not an aggravating circumstance. He further asserts that the instruction was an accurate statement of the law and thus, should have been given. Instruction D-S4 read as follows:

The fact that Frontrail Edwards has been convicted of capital murder is not in itself an aggravating circumstance and may not be considered by you when deciding to impose a sentence. The fact of conviction of capital murder does not, in and of itself, justify imposition of the death penalty.

¶147. This Court agrees with the State's argument that this instruction was cumulative as the jury was already properly instructed on the aggravating factors it could consider. It is not error to refuse a repetitious instruction. *Walker*, 671 So. 2d at 613; *Griffin*, 494 So. 2d at 381. Therefore, there is no merit to this assignment of error.

## F. Instruction D-S2

¶148. Instruction D-S2 was a mercy instruction which stated:

You are instructed that you need not find any mitigating circumstances in order to return a sentence of life imprisonment without the possibility of parole or early release. Moreover, even if you find that the

mitigating circumstances do not outweigh one or more aggravating circumstances, you can impose a life sentence without the possibility of parole or early release.

Edwards believes that he was entitled to this instruction under Mississippi law and the Eighth and Fourteenth Amendments to the United States Constitution.

¶149. "This Court has explicitly held that a 'defendant has no right to a mercy instruction.'" *Doss v. State*, 709 So.2d 369, 394 (Miss. 1996) (*quot*ing *Ladner v. State*, 584 So.2d 743, 761 (Miss.1991)); See also *Foster v. State*, 639 So.2d 1263, 1300-01 (Miss.1994). Therefore, the last instruction under this issue is without merit.

### XVIII. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE PROSECUTION STATED RACE-NEUTRAL REASONS FOR USING PEREMPTORY CHALLENGES ON HALF OF THE AFRICAN-AMERICANS IN THE JURY VENIRE?

¶150. Edwards alleges that the trial court erred in overruling his *Batson* challenges. He believes that this was a violation of his right to equal protection as guaranteed under the United States Constitution and the Mississippi Constitution.

¶151. Under *Batson*, the party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory strike. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986); *Stewart v. State*, 662 So. 2d 552, 557 (Miss. 1995). The burden then shifts to the party exercising the challenge to offer a race-neutral explanation for striking the potential juror. *Batson*, 476 U.S. at 97-98; *Stewart*, 662 So. 2d at 558. Finally, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory. *Batson*, 476 U.S. at 98; *Stewart*, 662 So. 2d at 558.

¶152. In the case sub judice, Edwards satisfied the first prong of the three-step analysis by pointing out that the State used its peremptory challenges to exclude half of the black jurors that were available for the jury, thereby giving rise to a reasonable inference of purposeful discrimination. The State then met its burden by offering a race-neutral reason for striking jurors 13, 30 and 42. The State's reason for striking juror 13, Henry Brown, was that he was unemployed, uneducated and litigious. The State's reason for striking juror 30, Edward Griffin, was that he had two felons in his family and had himself been previously arrested for possession of marijuana. The State's reason for striking juror 42, Cornelia Jordan, was that Mr. Druhet, a member of the defense team, had represented a member of her family. Thus, it must be determined if the trial judge abused his discretion in finding the State's explanation were race neutral.

¶153. This Court accords great deference to the trial court in determining whether the offered explanation under the unique circumstances of the case is truly a race-neutral reason. *Stewart*, 662 So. 2d at 558. This Court will not reverse a trial judge's factual finding on this issue "unless they appear clearly erroneous or against the overwhelming weight of the evidence." *Id.* (*quoting Lockett v. State*, 517 So. 2d 1346, 1350 (Miss. 1987)). One of the reasons for this is because the demeanor of the attorney using the strike is often the best evidence on the issue of race-neutrality. *Id.* at 559 (*citing Hernandez v. New York*, 500 U.S. 352, 365 (1991)). In addition to the demeanor of the attorney, the trial court must consider all other relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions on voir dire. *Stewart*, 662 So. 2d at 559. This Court should defer to the trial judge's discretion in the case sub judice.

¶154. Furthermore, it is important to note that the defense counsel declined the opportunity to rebut those explanations. "If the defendant makes no rebuttal the trial judge must base his decision only on the reasons given by the State." *Coleman v. State*, 697 So. 2d 777, 786 (Miss. 1997) (*citing* **Bush v. State**, 585 So. 2d 1262, 1268 (Miss. 1991)).

¶155. There is no merit to this allegation of error as defendant has not shown any reason to overcome the presumption of correctness and great deference that is to be given to the finding of the trial court.

### XIX. WHETHER THE TRIAL COURT ERRED IN DISMISSING PROSPECTIVE JURORS ON THE GROUNDS THAT THEY WERE ILLITERATE?

¶156. Edwards raises in this assignment as error the trial court's dismissal of two prospective jurors on the grounds that they were illiterate. Edwards challenges Miss. Code Ann. § 13-5-1 as being violative of the United States Constitution because it excludes illiterates from jury service. He asserts that the exclusion of illiterates results in a disproportionate exclusion of blacks and thus, produces a jury panel that is unrepresentative of the community.

¶157. In *Terrell v. State*, 262 So. 2d 179 (Miss.1972), this Court addressed the predecessor statute to § 13-5-1 (1972), which also required that a prospective juror be able to read and write. This Court stated:

> With the infinite variety of cases now in our courts and the multitude of written documents entered into evidence, the requirement that a juror be able to read and write is a reasonable and nondiscriminatory regulation which operates equally against all persons tried by juries. No advantage is afforded to the State which is not also afforded to the defendant. This requirement is just as essential to the State's obligation to afford the accused a fair trial as it is to assure a fair trial for the State. *State v. Comeaux*, 252 La. 481, 211 So. 2d 620 (1968). We are acquainted with no authority to the contrary.

*Id.* at 180. Furthermore, this Court specifically held in *Wilson v. State*, 574 So. 2d 1324 (Miss. 1990), that "[t]he literacy requirements of § 13-5-1 are constitutional." *Wilson v. State*, 574 So. 2d 1324, 1331 (Miss. 1990). *Wilson* absolutely controls and this assignment of error is held to be without merit.

### XX. WHETHER THIS COURT MUST REMAND FOR A NEW CAPITAL SENTENCING PROCEEDING BECAUSE THERE IS AT LEAST ONE INVALID AGGRAVATING CIRCUMSTANCE IN THE CASE SUB JUDICE; MOREOVER, WHETHER CAPITAL PUNISHMENT IS A DISPROPORTIONATE PENALTY UNDER THE FACTS OF THIS CASE?

¶158. Edwards argues in this assignment of error that there was insufficient evidence for at least one of the aggravating factors, if not for all three. Thus, he contends that the aggravating circumstances found by the jury are invalid. The three aggravating circumstances found by the jury were:

> The capital offense was committed while the Defendant was engaged in the crime of Robbery or was an accomplice to the Robbery;

> The capital offense was committed for the purpose of avoiding arrest;

> The capital offense was especially heinous, atrocious or cruel.

¶159. Appellate courts assume that juries follow the instructions. ***Payne v. State***, 462 So. 2d 902, 904 (Miss.1984). This Court has previously refused to re-weigh aggravating and mitigating circumstances on appeal. See, e.g., ***Clemons v. State***, 593 So. 2d 1004, 1006 (Miss.1992). In the instant case, this Court finds no reason to question the jury's finding as to the aggravating and mitigating factors.

¶160. Edwards first asserts that there was insufficient evidence to support the aggravating circumstance of HAC. However, the HAC instruction was properly limited. In addition, there was sufficient evidence in the record to warrant the instruction. Tony was shot in the head which blew out his eye socket. However, he did not die from this first shot, but began to severely bleed from his wound. He left the car and was forcibly walked a short distance from the road. He was then stuffed into the trunk of his car, only to be dumped out and shot through his temple, this being the fatal shot. He was dragged into the woods. Edwards and Jordan next forcibly led Codera, a two year old child, into the woods and shot him once in the head as he leaned over his father. These facts clearly depict the heinousness of this crime. For these reasons, Edwards' contention regarding the impropriety of the "especially heinous, atrocious, or cruel" aggravator is without merit. ***Crawford v. State***, 716 So. 2d 1028, 1047-48 (Miss. 1998).

¶161. Edwards also claims that the State adduced no evidence to support the proposition that the murder was committed for the purpose of avoiding or preventing the detection and lawful arrest of the defendant. However, statements by Edwards show he shot the victim in an effort to avoid getting caught. There is also the compelling evidence that Edwards and Jordan burned the vehicle stolen from Tony. Each case must be decided on its on peculiar fact situation. If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to "cover their tracks" so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance. ***Walker v. State***, 671 So. 2d 581, 611 (Miss. 1995) (*citing* ***Leatherwood v. State***, 435 So. 2d 645, 651 (Miss. 1983)). From the evidence adduced at trial, there is ample ground for the jury to have determined that the crime committed was committed in order for Edwards to avoid arrest. ***Walker***, 671 So. 2d at 611-12.

¶162. Lastly, there was plenty of evidence that these murders were committed while Edwards was in the commission of a robbery. When the victims were found, Tony's pockets were turned inside-out and were empty. There were also several items removed from Tony's vehicle, including stereo equipment, car-care products and a gun, not to mention the vehicle itself. There is no doubt that robbery took place. Therefore, there is no merit to this assignment of error.

¶163. Edwards also contends in this issue that his sentence of death is a disproportionate penalty under the facts of this case. In accordance with the mandate of Miss. Code Ann. § 99-19-105(3)(c), this Court shall determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Where the sentence is found to be disproportionate, this Court may "set the sentence aside and remand the case for modification of the sentence to imprisonment for life." Miss. Code Ann. § 99-19-105(5)(b).

¶164. The case of ***Davis v. State***, 684 So. 2d 643 (Miss. 1996), provides sufficiently similar facts upon which a comparison of sentences may be made. Davis confessed to killing Linda Hamilton in her trailer after she refused to give him money to buy drugs. He first shot Linda from behind, but the bullet did not kill her. After fifteen to twenty minutes, Davis stabbed Linda to death because she had begun to scream. Linda was left lying on the bed in the trailer. On the following day, Davis called the police and confessed to the murder.

¶165. This scenario is not unlike that in which Edwards was involved. Both cases involve murders committed in the course of a robbery. Also, both involved innocent victims, but the present case involve a second most innocent and helpless of victims - a two year old child. The child's father, like Linda, did not die from the first shot. He left the car and told Edwards and Jordan they could have the car. Edwards and Jordan could have taken the car and left the scene at that point. However, Jordan and Edwards again shot Tony, and later dragged him into the woods. Edwards next led Codera into the woods and shot him once in the back of the head, instantly killing him. They were given the opportunity to steal the car while sparing the lives of Tony and Codera, but that is not what they chose to do.

¶166. Having given individualized consideration to the defendant and the crime sub judice, this Court concludes that there is nothing about this defendant or this crime that would make the death penalty excessive or disproportionate in this case. *Blue v. State*, 674 So. 2d 1184, 1234-35 (Miss.1996) (death sentence proportionate where defendant abused drugs and alcohol at an early age, came from dysfunctional family, and had no positive role models at home); *Foster v. State*, 639 So. 2d 1263, 1304 (Miss.1994) (death sentence proportionate where young defendant had a low I.Q.); *Lanier v. State*, 533 So. 2d 473, 492 (Miss.1988) (death sentence was proportionate where defendant had been institutionalized twice for alcoholism and drug abuse); *Neal v. State*, 451 So. 2d 743, 761 (Miss.1984) (death sentence affirmed where defendant had been institutionalized at young age, had learning and family difficulties, and was not loved or supervised at home). See also *Cabello v. State*, 471 So. 2d 332, 350 (Miss.1985) (death sentence was proportionate where defendant strangled and robbed victim); *Evans v. State*, 422 So. 2d 737, 739 (Miss.1982) (death sentence was proportionate where defendant robbed and shot victim). Therefore, the death sentence in this case is neither disproportionate nor excessive.

## XXI. WHETHER THE ERRORS TAKEN TOGETHER ARE CAUSE FOR REVERSAL?

¶167. Edwards prays that the cumulative effect of the errors asserted on appeal demands that the case be reversed. Considering the fact that several errors require reversal, we reverse and remand for proceedings consistent with this opinion.

¶168. Although not assigned as error by the appellant, but confessed as error in the State's brief, we recognize as error Edwards' conviction of a separate armed robbery count along with the two counts of capital murder. Since armed robbery was the underlying felony in the capital murder charges, it was improper to also convict him of this same offense separately. We vacate the conviction and sentence for the armed robbery count in order to avoid multiple punishments for the same offense. *Holly v. State*, 671 So. 2d 32, 45 (Miss. 1996) (*citing United States v. Buckley*, 586 F.2d 498, 505 (5th Cir. 1978)).

¶169. Consequently, in light of Edwards' convictions of capital murder with armed robbery as an underlying offense, conviction on the armed robbery charge (Count III of the indictment) constitutes double jeopardy under the particular circumstances of this case. Therefore, we reverse and vacate the armed robbery conviction.

## CONCLUSION

¶170. This Court finds that: (1) the trial court committed reversible error in admitting during the sentencing phase evidence that Edwards was previously arrested for rape; (2) the trial court's jury instructions were erroneous as they did not conform to the indictment or to the relevant statutory provisions of Miss. Code Ann. § 97-3-19(2)(e); (3) the trial court committed reversible error in excluding relevant mitigation

evidence in the sentencing phase; (4) the state's verbal attack on defense counsel during closing arguments was error; and (5) there were cumulative errors requiring reversal of this case. For the foregoing reasons, Edwards' capital murder convictions and death sentences must be vacated, and this case is remanded for a new trial. Furthermore, Edwards' conviction of armed robbery is reversed and vacated.

¶171. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN RESULT ONLY.**